## Free's Estate.

Argued May 25, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Earl V. Compton,* with him *Karl E. Richards,* for appellant.

*John C. Kelley,* for appellee.

OPINION BY MR. JUSTICE BARNES, October 8, 1937:

The face amount of a life insurance policy was paid to a decedent during his lifetime by virtue of an absolute assignment of the contract. The wife beneficiary named in the policy here seeks to establish a parol trust of the insurance proceeds against the estate of the decedent assignee, and to surcharge his executor for a deficit in the alleged trust fund.

The following are substantially the facts as found by the court below. On November 2, 1928, the New York Life Insurance Company issued its policy for $5,000 upon the life of Lloyd P. Wood. Greta Wood, the wife of the insured, was the named beneficiary. Wood paid the premiums on the policy until 1930, when it lapsed for nonpayment of $77.20, representing two premiums then overdue. Warren B. Free, the insured's brother-in-law, agreed to pay the premiums if the policy could be reinstated. On April 8, 1930, after application by Wood, the company reinstated the policy, and on the same day it was assigned by the insured and his wife to Free. Lloyd P. Wood died on August 6, 1930, survived by his wife and two minor children. At that time Free's total payments of premiums on the policy amounted to $115.80.

Upon the refusal of the company to pay the policy, Free instituted suit and recovered a judgment for $5,-572.79, which the insurance company paid by its check to him. On July 14, 1932, after compensating his attorney, he opened an account with the Dauphin Deposit Trust Company in Harrisburg in the name of "Wally B. Free," in which he made a first and only deposit of $5,067.86. It is conceded that the money placed in this account represented the net proceeds from the insurance policy in question. Thereafter Free drew against this account to pay decedent's medical and funeral expenses, as well as certain notes upon which Wood was liable. In the same institution Free also maintained his personal checking account in the name of "Warren B. Free."

Free died on July 28, 1932, naming the Dauphin Deposit Trust Company as his executor. On the day of Free's death $3,140.18 remained in the "Wally B. Free" account. The executor then closed this account, depositing the balance therein in a new account which it opened in the name of the Free estate. In October, 1932, shortly after Free's death, the widow of Wood requested the

executor to pay over to her the balance of the insurance proceeds, and again the following month, through her attorney, written notice of her claim was given to the trust company. The executor informed claimant that the money belonged to the Free estate, and her claim would not be recognized. It continued to treat the insurance proceeds as an asset of the Free estate, and paid the debts and funeral expenses therefrom, until such disbursements had reduced the balance on hand to $1,221.48.

The first and final account of the executor showed total assets of the Free estate of $5,246.92; total payments of $4,316.55 with a net balance for distribution of $930.38. The claimant excepted to the account, and sought to surcharge the executor with the amount of $3,140.18, representing the insurance money in the "Wally B. Free" account at the death of Free.

An auditor was appointed, and after hearing testimony, awarded to the claimant and her two minor children the sum of $1,211.48, the balance of the fund at the time written notice of the claim was served upon the executor. Both claimant and executor excepted to this award, with the result that a reargument before the court in banc was granted. A final decree was subsequently entered surcharging the executor and directing it to pay to claimant and her children the insurance proceeds amounting to $3,140.18. This appeal of the executor is from that decree.

Two questions are presented. First, was there a trust of the insurance proceeds for the claimant and her children? Second, if a trust be declared, for what sum must the executor be surcharged?

It is conceded that the "Wally B. Free" account had its sole origin in the proceeds of the insurance. It is not denied that all of the funds in this account were appropriated by the executor. Hence there is no question of tracing the alleged trust res.

The issue is whether the record discloses proofs sufficiently clear and convincing to support the claim that the fund was held in trust. George Ross Hull, Esquire, who was the attorney for the insurance company in the suit to enforce payment of the policy, testified that while discussing the case with Free, the latter disclaimed any interest in the policy except for the premiums he paid.[1]

Similarly another witness, John H. Witter, an acquaintance of Free, stated that during conversations with Free the insurance had several times been mentioned and that Mr. Free ". . . told me that this policy had been assigned and he had paid the premium and his only interest was in getting this money—the amount he had paid and the rest was to go to Mrs. Wood and her two boys." These declarations made by Free to the witnesses Hull and Witter, afford convincing proof of the existence of a trust, and its recognition by Free.

Moreover, a consideration of attendant circumstances, such as the relationship between the parties, Wood's application to have the policy reinstated, and the opening by Free of a specially designated account for the insurance proceeds in an institution where his personal checking account was maintained, indicate that Free was holding the money collected from the insurance policies in trust. This conclusion is supported by the

---

[1] Mr. Hull testified in part as follows: ". . . while the trial was in progress I went back behind the rail where the parties were sitting and had a conversation with Mr. Free. I cannot quote the exact words. I said 'Mr. Free, the proceeds of this policy do not belong to you, what are you going to do with this money if you get it?' I think I said also that he would undoubtedly get a verdict. 'Well', he said 'the money doesn't belong to me.' He said, 'All that belongs to me is what I paid for the premiums.' He said, 'The rest of it belongs to Mrs. Wood and the children.' I asked him several other questions and he had several replies, telling me in that course of that conversation two or three times that excepting for the money he paid for the premiums it did not belong to him but to Mrs. Wood and her children."

fact that the amount so received was the only deposit made in the "Wally B. Free" account, and that the disbursements made therefrom were in payment of the debts of Wood.

A declaration of trust in personalty need not be manifested or proved by a written instrument. An oral declaration is sufficient if the proof thereof is definite and convincing: *Church v. Ruland,* 64 Pa. 432; *Donithen v. I. O. of F.,* 209 Pa. 170; *Washington's Estate,* 220 Pa. 204; *Christian Moerlein Brewing Co. v. Rusch,* 272 Pa. 181.

Appellant relies upon the case of *Rocks v. Sheppard,* 302 Pa. 46, but we believe that case to be clearly distinguishable upon its facts from the present one. There the purpose was to secure a large pre-existing indebtedness between assignor and assignee and there was no designation or setting aside of any specific fund to which the trust could attach.

Here the proofs clearly show that the understanding upon which the policy was assigned to Free was to secure him to the extent only of his premium advancements, and that upon his receipt of the policy proceeds, the amount thereof was to be held in trust for claimant and her two children. We share the view of the court below that the evidence establishes the creation of a trust.

There remains the question of the sum for which the executor must be held responsible to claimant. As stated the balance in the "Wally B. Free" account was $3,140.18 when letters testamentary were granted. The executor, shortly after Free's death, and several times thereafter had been put on notice of this claim to the fund. It should have been on guard, yet, despite all warnings, it distributed the fund for administration expenses and in payment of its decedent's debts. It did not see fit to protect itself, either by obtaining the approval of the Orphans' Court to the disbursements

made, or by procuring a refunding bond from the persons receiving the payments.

The executor's duty was to preserve the fund intact until its right thereto was determined in the manner provided by law. It had no authority without an accounting and audit to pay any of the fund to creditors of its decedent, when it had notice the fund was claimed by another.

The executor could have protected itself by requiring the claimant to prove her claim at the audit of its account. It elected to disregard this proper procedure, and usurped the powers of the court by determining that the claim to the fund in its hands was without merit. It took its chances in so doing and must be held responsible for the consequences. Fiduciaries who pay out funds in their hands without an audit of their accounts do so at their own risk. In *White's Est.*, 322 Pa. 85, 90, we said, "Only by proceeding in accordance with the statute may a fiduciary make distribution of the assets in his hands without liability to himself. While distribution without an audit is permitted (section 49b),[2] the act specifically provides that such distribution shall be at the fiduciary's 'own risk.' Having assumed the risk, appellant must be held responsible for all payments made without the approval of the orphans' court." See also *McFarlin's Est.*, 267 Pa. 510; *Est. of J. Morton Ivison*, 101 Pa. Superior Ct. 326.

It follows that the executor must be surcharged with the amount of the fund deposited in the name of "Wally B. Free" at the time letters testamentary were issued to it, that is, the sum of $3,140.18, and the decree of the court below awarding payment of that sum to the widow and children of Lloyd P. Wood, deceased, is hereby affirmed.

Decree affirmed. Costs to be paid by appellant.

---

[2] Fiduciaries Act of June 7, 1917, P. L. 447 (20 PS 862).