174

**OVERLY v. OVERLY et al.**
**Civil Action No. 2733.**

District Court, W. D. Pennsylvania.
April 5, 1946.

See also, D.C., 4 F.R.D. 312.

Robert Van der Voort and Rahauser, Van der Voort, Royston & Robb, all of Pittsburgh, Pa., for plaintiff.

J. Wray Connolly and Moorhead & Knox, all of Pittsburgh, Pa., for defendant Elmer Overly.

Elder W. Marshall and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for defendants Herbert W. Wehe and Alice R. Wehe.

McVICAR, District Judge.

This is an action by plaintiff, Homer Overly, to enforce the provisions of an alleged express oral trust and for an accounting and other relief against Elmer Overly et al., defendants. The Court, after hearing and consideration thereof, makes the following findings of fact and conclusions of law:

Findings of Fact.

1. Homer Overly is an individual, residing in the City of Clearwater, Pinellas County, Florida, and is a citizen of the State of Florida.

2. Elmer Overly is an individual residing in the Borough of Oakmont, County of Allegheny, Commonwealth of Pennsylvania. Alice R. Wehe and Herbert W. Wehe are individuals residing in Greensburg, Westmoreland County, Pennsylvania, all of whom were citizens of Pennsylvania.

3. The Overly Manufacturing Company is a corporation organized and existing under and in pursuance of the laws of the Commonwealth of Pennsylvania, having its principal place of business in Greensburg, Westmoreland County, Pennsylvania, and is a citizen of the Commonwealth of Pennsylvania.

4. The matter in controversy exceeds, exclusive of interest and costs, the sum of Three Thousand ($3,000) Dollars, and is between citizens of different states. Jurisdiction is authorized by the Act of Congress of March 3, 1875, c. 137, as amended, 28 U.S.C.A. § 41(1).

5. W. F. Overly & Sons, a Pennsylvania corporation, was engaged in the manufacture and sale of roofing, sheet metal doors and other sheet metal products from January, 1927 until August 28, 1935, having its principal place of business in Greensburg, Westmoreland County, Pennsylvania.

6. W. F. Overly (father of Homer Overly, plaintiff, Elmer Overly, defendant, Russell Overly and Irene Gowan) organized and generally managed and controlled the business of W. F. Overly & Sons.

7. On August 15, 1932, W. F. Overly & Sons filed a bill in equity in the Common Pleas Court of Westmoreland County, Pennsylvania, asking that it be adjudged in receivership because it owed money on

bonds, a mortgage, taxes, open accounts and notes held by banks in Greensburg; W. F. Overly and Lyle L. Jones were appointed Receivers; the banks were insisting on payment of the notes due them and compelled the receivership.

8. Homer Overly, plaintiff, was employed by W. F. Overly & Sons both prior to and during the receivership; Elmer Overly, defendant, was never employed by W. F. Overly & Sons.

9. The receivership was conducted at a loss, the company going $136,000 further into debt during the receivership.

10. During the receivership, plaintiff and W. F. Overly attempted to devise plans for the reorganization of W. F. Overly & Sons, but were unable to develop any plan that was accepted by the creditors.

11. In the spring of 1935, at the instance of Elmer Overly, and at the immediate request of Grant Shipley (Consulting Engineer of Koppers Company) and of Charles W. Veatch (Vice President of the Union Trust Company of Pittsburgh), Herbert W. Wehe, defendant (an employee of the Koppers Company at Pittsburgh, Pennsylvania), went to Greensburg and examined into the affairs of W. F. Overly & Sons, particularly with respect to its assets and future prospects.

12. To carry into effect Elmer's purpose of providing employment for his father, Elmer Overly entered into an oral arrangement with Herbert W. Wehe, another of the defendants, wherein Elmer Overly agreed to provide sufficient sums of money to purchase the personal assets and the real estate of W. F. Overly & Sons, Inc., a corporation; to form or cause to be formed a new corporation to become the owner of said assets so purchased; to employ Herbert W. Wehe as General Manager of the business at a salary of $6,000 per year; to give to Herbert W. Wehe 25% of the capital stock of the new corporation if the business proved to be successful, and to give to Herbert W. Wehe the first right to purchase the remaining shares of stock of the new corporation if and when Elmer Overly elected to sell the same.

13. Pursuant to the arrangement made with Herbert W. Wehe, Elmer Overly did cause to be formed a Pennsylvania corporation known as Overly Manufacturing Company, and Elmer Overly did subscribe for all of the capital stock, being 600 shares, and did pay into the corporation therefor the sum of $30,000 and, in addition thereto, said Elmer Overly loaned to said Overly Manufacturing Company the sum of $10,000, as a result whereof Overly Manufacturing Company became possessed of the sum of $40,000.

14. The sum of $40,000 was borrowed by Elmer Overly as follows: From the Union Trust Company of Pittsburgh, $20,000; from the Barclay Westmoreland Trust Company, Greensburg, Pennsylvania, $20,000.

15. Overly Manufacturing Company, through Herbert W. Wehe, purchased the assets of W. F. Overly & Sons, Inc., a corporation, exclusive of real estate, from the Receivers for the sum of $36,000, and Overly Manufacturing Company, through Herbert W. Wehe, was the successful bidder at a Receiver's Sale of the real estate, expending therefor the sum of $2,100, which real estate was subject to an outstanding bond issue of $70,000, a First Mortgage of $25,000, paving liens of $8,200 and back taxes aggregating approximately $8,000.

16. Elmer Overly, as principal stockholder of Overly Manufacturing Company, caused the corporation to employ W. F. Overly as President of the Company, at a salary of $400 per month, which position was held by said W. F. Overly from the time of the formation of the corporation in September, 1935 until his death on July 23, 1938.

17. At the death of W. F. Overly, there became due and payable certain sums of money as the proceeds of policies of insurance on the life of W. F. Overly, which said sums of money, together with salary remaining due to W. F. Overly, were placed in a bank account in the name of Alice R. Overly, widow of W. F. Overly, to be disbursed on the signatures of Herbert W. Wehe or Elmer Overly. The funds in question were used to pay nursing bills, doctor bills, funeral expenses, some bills incident to an injury suffered by Russell Overly, another son of W. F. Overly, and, thereafter, payments in the amount of $50 a week were made to Alice R. Overly until the fund was exhausted in December, 1939.

18. From December, 1939, until April, 1942, weekly payments at the rate of $50 per week were made by Overly Manufacturing Company to Alice R. Overly, which payments were charged to the account of

Elmer Overly, who reimbursed the corporation.

19. Pursuant to the arrangement made between Herbert W. Wehe and Elmer Overly in 1935, Herbert W. Wehe became the owner of 25% of the outstanding capital stock of Overly Manufacturing Company, or 150 shares, and Elmer Overly became the owner of 75% thereof, or 450 shares.

20. During the year 1939, Herbert W. Wehe purchased from Elmer Overly 150 shares of the corporate stock of Overly Manufacturing Company for a consideration of $20,000, under an oral arrangement whereby he gave to Charles W. Veatch 30 shares, and Elmer Overly gave to Charles W. Veatch 30 shares, so that in 1939 the stock ownership of the corporation was as follows:

| Elmer Overly, | 270 shares, |
| Herbert W. Wehe, | 270 shares, |
| Charles W. Veatch, | 60 shares. |

21. In April, 1942, the Overly Manufacturing Company purchased the outstanding 45% interest held by Elmer Overly, or 270 shares, for a consideration of $100,000, and the agreement by the corporation to pay Alice R. Overly, widow of W. F. Overly, the sum of $50 per week during her lifetime.

22. During the period from September, 1935, until April, 1942, Elmer Overly was associated with the business, having during the period personally endorsed notes of the corporation in various amounts up to $90,000, and having endorsed performance bonds of the corporation for amounts up to $400,000.

23. Neither Homer R. Overly nor Russell Overly were incorporators or investors in the Overly Manufacturing Company. Neither of them endorsed any notes or other obligations of the corporation or guaranteed any of the performance bonds.

24. Russell Overly was never regularly employed by the Overly Manufacturing Company.

25. Homer R. Overly was employed by the Overly Manufacturing Company from September, 1935 until May, 1936, when he was discharged by Herbert W. Wehe.

26. Homer R. Overly did not institute any action until September, 1943, and did not make any claim of interest in the Overly Manufacturing Company until late in 1939, although he had consulted with counsel with respect to his claim in 1937 and had, in 1939, denied having any interest in the Overly Manufacturing Company then or in the future.

27. The only person who contributed any funds to the Overly Manufacturing Company for the purchase of the assets of W. F. Overly & Sons was Elmer Overly.

28. Herbert W. Wehe has been the active manager of the Overly Manufacturing Company since its creation, moving his family from Pittsburgh to Greensburg in January of 1936.

29. Plaintiff, who was employed by the Overly Manufacturing Company until his discharge in May of 1936, had no part in the formation of the company, was not a subscriber to its stock and put no money in the company.

30. From the creation of the Overly Manufacturing Company until his death in July of 1938, W. F. Overly was President of the Company and for his services received a monthly salary of $400.

31. After Overly Manufacturing Company had acquired the remaining stock of Elmer Overly, Herbert W. Wehe made a gift to Alice R. Wehe, his wife, defendant, of 30 shares of the stock then owned by him, so that she might become a director of the company and thus satisfy the requirement of the company by-laws that the Board of Directors should consist of three persons.

32. Subsequent to April, 1942, Overly Manufacturing Company declared a stock dividend, as a result of which the number of outstanding shares of common stock of the company was increased to 990, all of which stock is presently owned by Herbert W. Wehe, Alice R. Wehe, his wife, and Charles W. Veatch.

33. Neither Elmer Overly nor any other person has an option on any of the stock of the Overly Manufacturing Company.

34. Herbert W. Wehe first learned of the claims of plaintiff and Russell Overly that Elmer Overly had promised to hold 75% of the original common stock of the Overly Manufacturing Company in trust for the children of W. F. Overly when Mr. Wehe was served with the summons and bill of complaint in the present suit in September, 1943.

35. The sole purpose of Elmer Overly in forming the Overly Manufacturing Company was to provide employment for

W. F. Overly, his father, who was then 70 years of age and in ill health.

36. Plaintiff has failed to establish the express oral trust averred in his complaint that Elmer Overly agreed to hold 75% of the original common stock of the Overly Manufacturing Company in trust for the children of W. F. Overly or that he did so hold it in trust.

### Conclusions of Law.

I. Plaintiff has failed to establish by clear, precise and indubitable proof the oral trust averred in his complaint.

II. Judgment should be entered in favor of all the defendants.

III. Plaintiff should pay the costs.

### Opinion.

Plaintiff, Homer Overly, avers in his complaint an express oral trust, whereby Elmer Overly, his brother, was trustee of 75% of the stock of the Overly Manufacturing Company; that he had violated said trust by conveyance and in other ways. Plaintiff seeks an enforcement of the trust in his favor, an accounting and other relief. Defendants deny that there was such a trust.

The question involved is whether Homer Overly established by clear, precise and indubitable proof, the express oral trust averred in the complaint. The facts are set forth in the foregoing findings of fact, so that it is not necessary to repeat the same here.

The law in relation to parol trusts of personal property, and the evidence required to establish the same, is well established in Pennsylvania. In Gribbel v. Gribbel, 341 Pa. 11, 13, and 14, 17 A.2d 892, 894, it is stated:

"It is firmly established that a trust in personal property may be established by parol. Christian Moerlein Brewing Co. v. Rusch, 272 Pa. 181, 186, 116 A. 145. The proof, however, must be clear, precise and indubitable, Washington's Estate, 220 Pa. 204, 205, 69 A. 747; definite and convincing, Free's Estate, 327 Pa. 362, 367, 194 A. 492; and the burden of furnishing it rests upon the party asserting the trust, Rocks v. Sheppard, 302 Pa. 46, 50, 152 A. 754. No particular form of words or conduct is necessary. Converse v. Hawse, 326 Pa. 1, 4, 190 A. 899; Restatement, Trusts, section 24(2). The declaration of intention to establish a parol trust must be definite, clear and explicit and embody all the essential elements. Bair v. Snyder County State Bank, 314 Pa. 85, 89, 171 A. 274. A final and definite intention to create a trust must be established and the evidence of its creation cannot be vague, uncertain or ambiguous. Brubaker v. Lauver, 322 Pa. 461, 185 A. 848; Restatement, Trusts, section 23."

In Ferguson Packing Co. v. Mihalic, 99 P.S.C.R. 158, 161, 162 (1930), it is stated:

"In Boyertown National Bank v. Hartman, 147 Pa. 558 [23 A. 842, 30 Am.St.Rep. 759], Justice Sterrett quotes from Ott v. Oyer, supra, [106 Pa. 6], and has this comment, 'what is meant by indubitable proof in connection with such cases is evidence that is not only found to be creditable but of such weight and directness as to make out the facts alleged beyond a reasonable doubt.' In Snyder v. Phillips, 25 Pa. Super.Ct. 648, the lower court affirmed the point that to entitle the plaintiff to recover 'he must satisfy the jury by evidence that is clear, precise and indubitable, that is beyond a reasonable doubt, that the alleged mistake in the making of the contract sued on was mutual.' On appeal this was held by the court to be no error, citing the above cases. In Michael v. Stuber, 73 Pa.Super.Ct. 390, the court charged the jury that the fraud alleged by the defendant had to be proved by her beyond a reasonable doubt and in its opinion on the motion for a new trial and for judgment n.o.v., the lower court reviews the cases of the subject and our court in an opinion by the late Judge Henderson affirmed the correctness of the instruction. The cases we have cited have been referred to in a number of later decisions and we find none that overrule the position which is above set out, to wit: that the phrase 'beyond a reasonable doubt' is the equivalent of the words 'clear, precise and indubitable,' and where the latter phrase can be properly employed, it is not error to use the words 'beyond a reasonable doubt.' We cannot convict the lower court of error in following these numerous decisions. The words 'beyond a reasonable doubt' places no harder burden on the litigant than the phrase 'clear, precise and indubitable' does. It appears that in an ordinary civil case, the burden of proof is sustained by presenting a preponderance of evidence, but where the fraud is

alleged, in the endeavor to set aside a written instrument the proof must be clear, precise and indubitable and in such connection, it is not error to require that it be 'beyond a reasonable doubt.' "

Plaintiff testified that the alleged express oral trust was made at a meeting between Elmer Overly, his father and himself. The father is dead; Elmer denies the making thereof. The testimony as to subsequent declarations of the trust made by Elmer, was principally that of plaintiff and his brother Russell, which was denied by Elmer. Subsequent to the making of said oral trust, plaintiff admitted to a disinterested witness that he did not have any interest in the Overly Manufacturing Company. The testimony of the alleged disinterested witnesses shed but little light, if any, on the question whether Elmer made the alleged express oral trust.

. Considering all the evidence and the credibility of the witnesses, I have reached the conclusion that the proof of the alleged oral trust fails to meet the standard required in Pennsylvania that it must be "clear, precise and indubitable."

Let an order for judgment be prepared and submitted in accordance with the foregoing findings of fact, conclusions of law and this opinion.