**UNION CENTRAL LIFE INS. CO. v MacBRAIR et**

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5864. Decided Oct. 28, 1940.

Dinsmore, Shohl, Sawyer & Dinsmore, Cincinnati, for The Union Central Life Ins. Co.

Loyal Martin, Cincinnati, for Alfred W. MacBrair.

Bert H. Long, Cincinnati and Milton M. Bloom, Cincinnati, for Blanche MacBrair.

## OPINION

By MATTHEWS, J.

This is a contest between two interpleaded defendants over the unused portion of the single premium paid for an insurance policy, issued to Elizabeth M. Harrison, by the terms of which the insurer in consideration of a payment of $20,000.00 agreed to pay a stipulated annuity to her during life, and in the event that the aggregate of the annuities was less than the amount paid by her for the annuity contract, then to pay the difference, after her death, to her designated beneficiary. The annuitant died before receiving an amount equal to the single premium. Section A contains the only provision bearing upon the right to this residue. We quote that section:

"A1. OWNERSHIP. The annuitant shall have the right at any time and from time to time, to change the beneficiary, by written notice in form acceptable to the Company, which will be furnished on request, and may agree with the Company to any change in or amendment of the policy, without the consent of any beneficiary.

"2A. BENEFICIARY. Such sums, if any, as may be payable on the death of the annuitant shall be paid to Alfred W. Macbrair, her brother, if living at the death of the annuitant, otherwise to the executors, administrators or assigns of the annuitant."

Shortly before her death, the annuitant had prepared and signed a typewritten statement, a copy of which is:

"2221 Highland Ave.,
Mt. Auburn, Cin., O.
July 15, 1939.

I desire that the residue of my aunity Life Insurance be paid to my brother Alfred W. Macbrair, who shall divide it equally between himself and his daughter, Blanche Mabrair, my niece.

In the event of my brother's death, it shall be paid to my niece Blanche Macbrair.

(Signed)
MRS. ELIZABETH M. HARRISON.
Witness:
Glenna Payne."

It appears that the niece lived next door to the insured and spent much of her time with her aunt in her home. This statement was prepared and signed in the aunt's home. It is sufficient for the purposes of this case to quote the testimony of the niece as to what occurred on the occasion of the signing of this statement. She said:

"A. One morning I was in the kitchen and she called to me. It was quite early in the morning, and I went into

the little den, and she was sitting at the card table, and she had some papers there and she said, 'I have some very important things for you to take care of, and I want to talk to you about them today.' And she told me of a number of things, quite a few personal things there at that time.

"Q. Let's get to this policy.

"A. Then she said, 'I want you to go upstairs and get that policy.' I went upstairs and got it again and brought it down, and she said, 'Will you figure and see how much there is left.' I said, 'I will do the best I can.' I scribbled on the paper and told her as near as I could reckon in my amateurish way. Then she said, 'I want you to tell your father that I want him to divide this with you, and in the event of his death I want this to go to you.' She said, 'You write down as I tell you,' and I did, and I turned the paper over to scribble it, and she said, 'You had better type it and I will sign it,' and Miss Payne was present most of the time. Then she said, 'You put that in the policy and put it back in the tin box and lock it,' and she said to me, 'I am trusting your father to abide by my wishes, and I am trusting you as my executrix to carry out the will. I am trusting you to abide by the things which I have told you to do.' And I said, 'You know that I will do it.'

"Q. What did you do with this exhibit, this document which she directed you to writ out?

"A. I put it in the policy.

"Q. How did you put it in the policy?

"A. I pinned it in the policy.

"Q. And put it back in the box?

"A. And put it back in the box upstairs, in the tin box, and locked it."

This policy and this statement pinned to the envelope in which the policy was enclosed, remained there all during the remaining lifetime of the annuitant. It can, therefore, be said that this writing remained in the continuous and exclusive possession of the annuitant from the time she executed it to the time of her death.

There is no evidence that the annuitant gave to any one at any time any instruction to deliver this statement to any one or to notify any one of its execution. No one was notified of its existence until after the annuitant's death. Neither the insurer nor Alfred W. Macbrair, the beneficiary, knew about it until the defendant Blanche MacBrair told them, and this was after the annuitant's death.

The trial court concluded that the statement signed by the annuitant was entirely ineffectual in law either as a change in the beneficiary or as imposing an obligation on the beneficiary named in the policy to divide the residue as directed. The court accordingly rendered judgment in favor of Alfred W. MacBrair for the entire balance, free of any claim of Blanche MacBrair. It is from that judgment that this appeal was taken.

(1) The appellant contends that by this statement the insured effected a change in the beneficiary to the extent of one-half of the residue. In support of this position, reliance is placed chiefly upon **Atkinson v Metropolitan Insurance Co., 114 Oh St 109, Arnold v Newcomb, 104 Oh St 578,** and **Pennsylvania Mutual Life Insurance Co. v Mecklenborg, 16 Abs 162.**

There is no doubt that these and many other cases hold that where the unconditional right to change the beneficiary is reserved, additional provisions as to the mode and manner of making the change are deemed solely for the benefit and protection of the insurer, and if it sees fit to waive such provisions, no right of the original beneficiary is violated, and the intention of the insured to change the beneficiary given effect, notwithstanding noncompliance with the provisions of the policy as to the mode and manner of expressing such intent.

But as we view the facts of this case, the insured never manifested an intent to change the beneficiary. In neither the oral conversation with her niece, nor the language of the written statement, can be found any intent to disturb the relation between the insurer and the original beneficiary. The obligation to pay him the residue was recognized and in the writing direct-

ly re-affirmed. Therefore, the cases discussing the distinction between language in a policy imposing a limitation upon the right to change the beneficiary, which cannot be enlarged without the consent of the beneficiary, and language which confers an absolute right to change with added provisions as to the mode of exercising the right inserted for the protection of the insurer, so that it may be certain of the insured's intent, are inapplicable here.

We conclude that at the time the insured died, Alfred W. MacBrair was still the beneficiary in this policy.

(2) Next it is claimed that, even assuming that as between the insurer and Alfred W. MacBrair, the latter was the beneficiary and entitled to be paid by it, still Alfred W. MacBrair was charged with a duty to carry out the clear intent of the insured by dividing the money received equally with his daughter. It is contended that a trust was imposed for the benefit of the daughter.

There is no doubt that according to the greater weight of the authorities, a promise, express or implied, of the beneficiary to the insured to dispose of the proceeds of insurance in a certain way will be en-forced by a court of equity, and the proceeds of the policy in his hands charged with a trust to effectuate the intention. And when the insured has reserved the power to change the beneficiary, and notifies the beneficiary of his desire, and the beneficiary does not repudiate it, his consent or acquiescence is implied. 29 Am Jur. 956, LeGrande v LeGrande, 102 A. L. R., (178 S. C. 230, 182 S. E. 432) 582 and annotation.

**Wolcott v Wolcott, 17 Oh Ap 48, Duncan v Linton, 38 Oh Ap 57, and Dorland v Whitmer, 43 Oh Ap 285,** fall within the foregoing class. The other case relied upon, **Pennsylvania Mutual Life Ins. Co. v Mecklenberg, 16 Abs 162,** is essentially the same kind. The policy was payable to the insured, his executors, administrators, and assigns. It did not involve the element of a named beneficiary. The insured and the beneficiary were identical, so that the in-sured was in a position to assign the policy, create a trust therein, or direct the channel in which the benefit should flow without let or hindrance of any one other than the insurer and it waived whatever right it had in that respect.

The facts of this case do not permit the application of the rules applied in any of these cases. This policy contained a named beneficiary, who was never informed of any intent by the insured to change the beneficiary by creating a trust or otherwise. All that the evidence shows is that the insured expressed a desire in a writing of which she carefully retained complete control in the presence of circumstances that would have made delivery easy. It could not take effect as a gift because there was no semblance of delivery either actual or constructive. It could not take effect as a contract as there was no consideration. It could not take effect as a declaration of trust because the declarant did not have possession of the corpus and was not in a position to declare herself in praesenti, a trustee for the benefit of the appellant. Not being in position to make of herself a trustee by so declaring, the only possible way of creating a trust was to impose such a trust upon the holder of the legal title, the beneficiary, and that would require the knowledge and consent of the beneficiary which was not obtained.

It is our view that what the insured did was merely the expression of a desire unaccompanied by any act which would give to it juristic significance, or even that the insured intended that it should have such significance.

The following cases fall within the same class of ineffectual expressions of desire. The Aetna Life Insurance Co. v Hartley, 4 F. Supp., 639, Mueller v Mueller, 222 Ill. Ap. 435, Cessna v Adams, 93 N. J. Eq. 276, 115 Atl. 302.

For these reasons, the judgment is affirmed.

HAMILTON, PJ. & ROSS, J. concur.