FINNEY, RECR., APPELLEE, *v.* HINKLE, APPELLANT, ET AL., APPELLEES.

(No. 577—Decided April 2, 1958.)

*Messrs. Miller & Finney,* for Charles R. Finney, receiver.
*Messrs. Murray & Murray,* for appellant.
*Mr. Philip Aultman,* for appellees John McGinnis and others.

WISEMAN, J. This is an appeal on questions of law and fact. The evidence taken below has been submitted as the record in this court.

Plaintiff brought an action, as receiver for Hinkle & Company, Inc., an Ohio corporation, for a declaratory judgment respecting his rights to the proceeds of a certain life insurance policy on the life of William E. Hinkle, deceased, in the amount of $10,000, issued by The Metropolitan Life Insurance Company

under date of September 8, 1952, which designates the defendant Chester R. Hinkle as beneficiary. Plaintiff alleges that defendant Hinkle, by a written agreement, agreed to pay to Hinkle & Company, Inc., any proceeds he may receive under said policy. Plaintiff asks the court to determine the validity of such agreement.

Defendant Hinkle, in his answer, denies he executed the written agreement, and says that if his signature appears on said alleged agreement it was obtained without his knowledge by fraud or concealment. Defendant Hinkle asks the court to declare the written agreement null and void.

Under an order of interpleader, The Metropolitan Life Insurance Company paid the amount of the proceeds of the policy ($10,230.58) to the clerk of courts, and was discharged.

The lower court held the written agreement to be valid, and ordered the clerk to pay the proceeds of the policy to the receiver. From this order, defendant Hinkle appealed.

A concise statement of facts will suffice. Hinkle & Company, Inc., hereinafter referred to as the company, was incorporated under the laws of Ohio in 1948, and in recent years engaged in the business of constructing houses. Chester R. Hinkle, the father, was president of the company. William E. Hinkle, the son, was treasurer and general manager of the company. The father knew little or nothing about the business, the son being exclusively in charge, and in a very real sense it was a one-man business. On April 10, 1952, William E. Hinkle applied for the purchase of what is known as a "key-man" insurance policy on his life, for the benefit of the company. The evidence further shows that negotiations were carried on between the insurance company and William E. Hinkle respecting who should be designated as beneficiary, the insurance company claiming that the company should be designated beneficiary, and William E. Hinkle insisting that his father, Chester R. Hinkle, should be the beneficiary. With some reluctance, and at the insistance of the insured, the father was named beneficiary, and on September 8, 1952, the policy was issued.

The insured did not reserve the right to change the beneficiary without the consent of the beneficiary. The insured paid the first premium out of his personal funds. Later, after con-

ferring with his attorney, a written agreement was prepared which was executed on November 24, 1952. The written agreement is as follows:

"AGREEMENT

"This agreement entered into this ...... day of November, 1952, between Chester R. Hinkle, party of the first part, and Hinkle & Company, Inc., party of the second part, both of Xenia, Ohio.

"Witnesseth:

".Whereas the first party is a beneficiary under a policy of The Metropolitan Life Insurance Company upon the life of William E. Hinkle, policy No. 19466243A, dated September 8th, 1952, and

"Whereas this date the premiums for said policy are to be paid by agreement between the insured and the beneficiary, who is also the first party in this contract, and the second party, by the second party.

"In consideration of said second party paying the premiums when due upon said contract, said Chester R. Hinkle hereby agrees that he will endorse and pay over unto the second party any proceeds or benefits that he may receive or have the right to receive under said policy.

"In witness whereof we have hereto set our hands this 24 day of November, 1952.

"Signed in the presence of:

"Chester R. Hinkle
"Chester R. Hinkle
"First party
"HINKLE & CO., INC.
"By
"William E. Hinkle,
"William E. Hinkle, Treas."

It will be observed that the agreement was signed by Chester R. Hinkle and the company by William E. Hinkle, Treasurer. The third paragraph of the agreement recites that there was an agreement between the insured, William E. Hinkle, the beneficiary, Chester R. Hinkle, and the company, to the effect that the premiums on the policy are to be paid by the company,

and the fourth paragraph provides that, in consideration of the company paying the premiums, Chester R. Hinkle agrees to endorse and pay over to the company "any proceeds or benefits that he may receive or have the right to receive under said policy." The agreement was not filed with the insurance company, and it knew nothing about the agreement until after the death of the insured, which occurred on June 10, 1954.

The record further shows that the second annual premium was paid on October 1, 1953, by a check issued by and charged against the company account. There was evidence to the effect that certain creditors of the company were informed by William E. Hinkle that there was insurance on his life for the benefit of the company and for the protection of creditors of the company.

The appellant contends that the agreement was an illegal attempt to change the beneficiary without complying with the terms of the policy, and that the agreement was void and unenforceable for want of consideration.

The appellant relies chiefly on the case of *Prudential Ins. Co. of America v. Olt*, 124 F. Supp. (N. D. Ohio, W. D.), 223, where the mother purchased an endowment policy on the life of her daughter and paid the premiums thereon, the daughter being named beneficiary of the proceeds of the policy, if living. The court held:

"Where endowment life insurance policy provided for payment of proceeds to the insured if she were living on date for payment, and permitted no modification of policy except by endorsement signed by officer of company, mother of insured was not entitled to proceeds of policy despite alleged oral agreement with insured that mother, who had paid premiums, would be entitled to proceeds if she were living at date for payment."

The court held that the daughter, the insured, under the terms of the policy was entitled to the proceeds, and no modification of the policy was effected according to the terms of the policy; that an oral agreement between the mother and daughter was intended to operate as a change of the beneficiary without complying with the terms of the policy; and that the payment of the premiums by the mother gave her no additional right to the proceeds. That case involved a change of beneficiary. In the case at bar there was no attempt to change the beneficiary.

The written agreement recognizes the right of the father, as beneficiary, to collect the proceeds of the policy. In our opinion, the cited case is distinguishable from the case at bar.

The appellant contends that the written agreement was void for want of consideration. The point is made that the appellant was not benefited. "A valuable consideration may consist either in a benefit to the promisor or a detriment to the promisee. More elaborately stated, a valuable consideration may consist either in some right, interest, profit, or benefit accruing to the promisor or some forbearance, detriment, loss, responsibility given, suffered, or undertaken by the promisee." 11 Ohio Jurisprudence (2d), 304, Section 67. The company was not legally bound to pay the premiums. The doing of something which one is not legally bound to do constitutes detriment and is a valid consideration. We conclude that the agreement is supported by a valuable consideration and is valid. Since change of beneficiary without his consent was not reserved, the father had a vested interest in the policy. 22 Ohio Jurisprudence, 409, Section 268. He was competent to contract with respect to such interest.

May this court impress a trust on the proceeds in favor of the company? In 102 A. L. R., 588, 590, the annotation states that:

"The great majority of the cases upholding the validity and enforceability of a promise by the beneficiary of life insurance to the insured to pay the proceeds of the insurance, in whole or in part, to a third person, proceed upon the theory that such an arrangement raises a trust in favor of the third person which is enforceable in equity."

In the case at bar, all three parties agreed to the proposition, and the written agreement was signed by the third person, the company, by the insured, as treasurer of the company, and by the beneficiary.

In 29 American Jurisprudence, 956, Section 1281, it is stated:

"It is generally held, upon varying theories, that a promise by the beneficiary to the insured to collect and pay the whole or a part of the proceeds of a policy of insurance to a third person is valid and enforceable as against the promisor. The great

majority of the cases upholding the validity and enforceability of such a promise proceed upon the theory that such an arrangement raises a trust in favor of the third person which is enforceable in equity. * * * The theory of estoppel has also been invoked in relation to such a promise under particular circumstances so as to preclude the beneficiary from claiming the proceeds of the insurance.

"* * * It is also generally recognized or specifically held' that the promise by the beneficiary of life insurance to the insured to pay the proceeds, in whole or in part, to a third person, is valid and enforceable as a trust, even though oral."

The authors of above texts cite numerous cases supporting the rule. Some courts hold that a valuable consideration must be shown, and where the insured reserves the right to change the beneficiary, the retention of the position of beneficiary furnishes sufficient consideration. In the instant case, a valuable consideration exists, and it is not necessary to further discuss this proposition.

The rule is not too well established in Ohio. A trust has been declared in war risk insurance cases. 22 Ohio Jurisprudence, 428, Section 285. See *Wolcott* v. *Wolcott*, 17 Ohio App., 48; *Duncan* v. *Linton, Admx.*, 38 Ohio App., 57, 175 N. E., 621; *Dorland* v. *Whitmer*, 43 Ohio App., 285, 182 N. E., 686. In those cases the question of consideration was not involved, nor whether change of beneficiary was reserved. It appears that the courts, in deciding those cases, proceeded to effectuate the purpose of the insured who had expressed a desire to change the beneficiary, but had failed to do so, by declaring a trust.

In the case of *Union Central Life Ins. Co.* v. *MacBrair*, 66 Ohio App., 144, 31 N. E. (2d), 172, where the insured, in a writtent statement attached to the policy, expressed his desire that the beneficiary divide the proceeds of the policy with his daughter, and no notice was given to the insurer, and where the beneficiary had no notice of, and did not agree to carry out the insured's intent, the court held that a trust will not be declared in favor of the daughter. The facts in the cited case are dissimilar to the facts in the instant case and it furnishes no precedent to follow in resolving the question presented here. However, in the opinion there appears a dictum in which the court states the rule above quoted from 29 American Jurisprudence, 956.

In that case, the court places the *Wolcott, Duncan* and *Dorland cases* in the category supporting the rule stated in American Jurisprudence. The court then distinguishes the case before it from the above-mentioned Ohio cases, and, on page 150, states:

"It could not take effect as a contract as there was no consideration. It could not take effect as a declaration of trust because the declarant did not have possession of the corpus and was not in a position to declare herself *in praesenti,* a trustee for the benefit of the appellant. Not being in position to make of herself a trustee by so declaring, the only possible way of creating a trust was to impose such a trust upon the holder of the legal title, the beneficiary, and that would require the knowledge and consent of the beneficiary which was not obtained."

The *in praesenti* requirement is necessary only in the declaration of a voluntary trust, without consideration. 40 Ohio Jurisprudence, 154, Section 24. This requirement is not essential where the trust is based on a written agreement supported by a consideration.

A trust is impressed on the proceeds of the policy in favor of the company. The court orders the clerk of courts to pay such proceeds to the receiver for the company.

*Judgment accordingly.*

HORNBECK, P. J., and CRAWFORD, J., concur.