FRANKIE SURRETT BALLARD, GUARDIAN OF LINDA LANCE AND DOUGLAS LANCE v. FRANK LANCE, CALVIN LANCE, MARY LACY BYRD, GUARDIAN OF FRANK LANCE AND CALVIN LANCE; MICHAEL LANCE, JACKIE LANCE, MARY LACY BYRD, GUARDIAN OF MICHAEL LANCE AND JACKIE LANCE; DAWN LANCE AND MARY LACY BYRD, GUARDIAN OF DAWN LANCE

No. 6928SC354

(Filed 27 August 1969)

1. Evidence § 11— transactions with decedent — disposition of life insurance proceeds

In declaratory judgment action to distribute the proceeds of an airline accident life insurance policy, testimony of insured's daughter that prior to

the death of her mother in an airline crash the mother instructed her that the mother's two grandchildren named in the policy were to share the proceeds thereof with her remaining grandchildren *is held* not barred by G.S. 8-51, where daughter was not testifying in her own interest.

**2. Trusts § 14— creation of constructive trust — life insurance proceeds**

In declaratory judgment action to distribute the proceeds of an airline accident life insurance policy, insured's statement to her daughter at the time the policy was issued that there was not enough room on the policy to name all of her grandchildren as beneficiaries and that if anything happened to her the two grandchildren named thereon were to share the proceeds of the policy with her remaining grandchildren *is held* to create a constructive trust in the policy proceeds in favor of the grandchildren not named in the policy.

**3. Trusts § 14— creation of constructive trust — minor trustees**

The fact that the trustees are under 21 years of age does not affect a constructive trust, and the trust remains enforceable despite their minority.

**4. Wills § 1— testamentary disposition — life insurance trust**

The mere fact that the proceeds of a life insurance policy subject to a constructive trust are not payable until the death of the insured does not make the disposition testamentary, and the insurance trust will be upheld even though it has not been executed with the formality necessary to constitute a will. G.S. 36-53.

APPEAL by plaintiff from *Martin, J.,* 27 January 1969 Session, BUNCOMBE County Superior Court.

A jury trial was waived and the parties consented and agreed that the Court could hear the evidence, consider the pleadings and stipulations of the parties and make findings of fact and conclusions of law and enter judgment thereon.

The Court found the following facts:

Beulah Lance died 19 July 1967 as a result of an airplane crash in Henderson County, North Carolina; she left surviving her seven infant grandchildren, namely, Michael Lance, Jackie Lance, Linda Lance, Douglas Lance, Frank Lance, Calvin Lance and Dawn Lance; prior to boarding the aircraft, Beulah purchased a contract of insurance with Mutual of Omaha Insurance Company in the amount of $40,000.00; proof of claim has been made and said $40,000.00 has been paid to the plaintiff, Frankie Surrett Ballard, as guardian of Linda Lance and Douglas Lance; at the time of purchase of the insurance, Beulah Lance was in the presence of her daughter, Blanche Shuler, and stated, "there is not enough room to put all of the grandchildren on the insurance policy, and I'll just put on Linda and

Doug. If anything happens to me, be sure and tell Frankie that half of it is to be for Linda and Doug and the rest of it is to be divided between the grandchildren"; that "Frankie" was the plaintiff, Frankie Surrett Ballard, and that Linda and Doug are the infant plaintiffs; after the policy was issued and the above statements made, Beulah Lance put the policy in an envelope and gave it to Blanche Shuler, who thereafter took the policy and gave it to Frankie Surrett Ballard. Beulah Lance had another grandchild, Martin Shuler, who accompanied her on the aircraft and came to his death in the air crash. He was the only child of Blanche Shuler, daughter of Beulah Lance.

The trial court made conclusions of law to the effect that the testimony of Blanche Shuler was competent; by virtue of the oral statement of Beulah Lance and her relationship to the parties to the action, a trust arose by operation of law and the two named beneficiaries in the insurance policy hold the proceeds of said policy as trustees for themselves and the other five minor defendants in the action in accordance with the terms of the oral statement. The court further concluded that the plaintiff, Frankie Surrett Ballard, as guardian of Linda Lance and Douglas Lance, holds the $40,000.00 proceeds of the insurance policy as trustee for her two children Linda Lance and Douglas Lance to the extent of 50% of the balance remaining after payment of the court costs, including reasonable counsel fees; that the remaining 50% of said balance should be paid to the other grandchildren (children of other children of Beulah Lance) as follows: 10% to Mary Lacy Byrd, Guardian of Frank Lance; 10% to Mary Lacy Byrd, Guardian of Calvin Lance; 10% to Mary Lacy Byrd, Guardian of Michael Lance; 10% to Mary Lacy Byrd, Guardian of Jackie Lance; 10% to Mary Lacy Byrd, Guardian of Dawn Lance.

The plaintiff filed exceptions to various findings of fact and conclusions of law and appealed to this Court.

*Gudger and Erwin by Samuel J. Crow for plaintiff appellant.*

*Giezentanner, Willson & Brock by Floyd D. Brock for defendant appellees.*

CAMPBELL, J.

[1] The first question presented by this appeal is whether the testimony of Blanche Shuler concerning the oral statements made by Beulah Lance at the time she purchased the contract of insur-

ance was competent. The plaintiff had objected to this testimony and preserved an exception to the introduction thereof.

Blanche Shuler testified that she went to the airport with her mother and her son Martin Shuler. At the airport and before boarding the plane, Beulah Lance procured from a machine located at the airport an application for Mutual of Omaha non-renewable scheduled airline trip accident life insurance policy. Blanche Shuler testified, "She filled it out. Well, she started to fill it out, and she was laughing and she said, 'Well, which one am I going to put on this time?' And she looked at my little boy, and she said, 'I can't put you on, because,' she said, 'You're going with me.' And then she said, 'Why, there's not enough room to put 'em all on here, I'll just put Linda and Doug,' and she said, 'If anything happens to me, be sure and tell Frankie that half of it's to be for Linda and Doug and the rest of it will be divided between the grandchildren.' And next thing she said, she'd like — she said, 'Of course, you'll have to bury me.' She said, 'nothing will happen,' then she just kept on, 'Don't worry about it. Nothing will happen.' "

The plaintiff bases her objection to the admission of this evidence upon the statute G.S. 8-51.

This statute has been construed numerous times under varying situations. *Wilder v. Medlin,* 215 N.C. 542, 2 S.E. 2d 549; *Wilson v. Ervin,* 227 N.C. 396, 42 S.E. 2d 468.

In *Peek v. Shook,* 233 N.C. 259, 63 S.E. 2d 542, Ervin, J., for the court stated:

> "This statute does not render the testimony of a witness incompetent in any case unless these four questions require an affirmative answer:
>
> 1. Is the witness (a) a party to the action, or (b) a person interested in the event of the action, or (c) a person from, through or under whom such a party or interested person derives his interest or title?
>
> 2. Is the witness testifying (a) in his own behalf or interest, or (b) in behalf of the party succeeding to his title or interest?
>
> 3. Is the witness testifying against (a) the personal representative of a deceased person, or (b) the committee of a lunatic, or (c) a person deriving his title or interest from, through or under a deceased person or lunatic?
>
> 4. Does the testimony of the witness concern a personal

transaction or communication between the witness and the deceased person or lunatic?

\* \* \*

Somewhat similar analyses of the statute appear in the following authorities: *Bunn v. Todd*, 107 N.C. 266, 11 S.E. 1043; Stansbury on the North Carolina Law of Evidence, section 66.

A personal transaction or communication within the purview of the statute is anything done or said between the witness and the deceased person or lunatic tending to establish the claim being asserted against the personal representative of the deceased person, or the committee of the lunatic, or the person deriving his title or interest from, through or under the deceased person or lunatic. *Davis v. Pearson*, 220 N.C. 163, 16 S.E. 2d 655; *Boyd v. Williams*, 207 N.C. 30, 175 S.E. 832."

In the instant case the testimony of Blanche Shuler would not require an affirmative answer to any of the questions. She was not testifying in her own interest, and we hold that her testimony was not barred by the statute. Compare with *Sanderson v. Paul*, 235 N.C. 56, 69 S.E. 2d 156.

[2] The second question presented by this appeal is whether the oral statement made by Beulah Lance at the time she filled out the application for the insurance policy created a trust in favor of the grandchildren who were not specifically named in the application and who were children of Beulah Lance's other children.

Judge Martin found as a fact, upon competent evidence, "that Beulah Lance stated at the time the insurance policy was issued that 'there was not enough room to put all of the grandchildren on the insurance policy, and I'll just put on Linda and Doug. If anything happens to me, be sure and tell Frankie that half of it is to be for Linda and Doug and the rest of it is to be divided between the Grandchildren.' "

[3] A trust may be created although there is no mention of a trust in the policy. The fact that the trustees, namely, Linda and Doug, are under age does not affect the trust, and it remains enforceable despite their minority. *Levin v. Ritz*, 17 Misc. 737, 41 N.Y.S. 405.

[4] The mere fact that the proceeds are not payable until the death of the insured does not make the disposition testamentary. An insurance trust will be upheld even though it has not been executed with the formality necessary to constitute a will. G.S. 36-53 provides:

*"Interest of trustee as beneficiary of policy sufficient to support inter vivos trust.* — The interest of a trustee as the beneficiary of a life insurance policy is a sufficient property interest or res to support the creation of an inter vivos trust notwithstanding the fact that the insured or any other person or persons reserves or has the right or power to exercise any one or more of the following rights or powers:

(1)  To change the beneficiary,

(2)  To surrender the policy and receive the cash surrender value,

(3)  To borrow from the insurance company issuing the said policy or elsewhere using the said policy as collateral security,

(4)  To assign the said policy, or

(5)  To exercise any other right in connection with the said policy commonly known as an incident of ownership thereof. (1957, c. 1444, s. 1.)"

In *Cooney v. Montana*, 347 Mass. 29, 196 N.E. 2d 202, a man took out a policy of life insurance for $10,000.00 with a double indemnity feature in case of death by accident. The policy named his sister as beneficiary. The sister agreed to pay $5,000.00 to one child, $2,500.00 to another, and the balance after paying the funeral expenses to a third child. The insured was accidentally killed. The court held that the entire $20,000.00 should be divided proportionately among the three children. The sister was not allowed to keep any of the proceeds, and there was not a resulting trust of the extra $10,000.00.

In the case of *In re Koziell's Trust*, 412 Pa. 348, 194 A. 2d 230, the insured had an insurance policy naming his wife as beneficiary. He and his wife separated, and the insured changed the beneficiary in the policy from the wife to his sister without telling his sister. At the time of making the change, he stated that his reason for doing so was that he did not wish his wife to have the proceeds from the policy, and that his sister would take care of his two minor children. After the death and the collection of the proceeds of the policy, the sister claimed the money personally. The Pennsylvania Court held that a parol trust of personal property was perfectly all right, and that the insurance proceeds were impressed with the trust even though the new beneficiary did not know about the trust. To the same effect, see *Ballard v. Ballard*, 296 S.W. 2d 811 where the

Texas court held that a parol trust of an insurance policy proceeds was perfectly valid.

In the case *sub judice,* we have a situation where the trust relationship is created at the inception of the policy. Only two of the beneficiaries could be named in the space provided, and accordingly Beulah Lance at that time stated that all of her grandchildren were to share in the proceeds. This case is therefore distinguishable from *Union Central Life Ins. Co. v. MacBrair,* 66 Ohio App. 144, 31 N.E. 2d 172, where the policy was in existence with a named beneficiary and the insured wrote a letter advising the beneficiary how to divide the proceeds when collected but never advised the beneficiary about the letter and simply attached it to the policy itself. We do not face that situation, and this decision is not to be construed as following or opposing the view expressed by the Ohio court.

If Linda Lance and Douglas Lance were to retain all of the proceeds of the insurance policy as contended for by the plaintiff, the result would be contrary to the wishes of their grandmother, Beulah Lance, at the time she took out the insurance policy, and they would be unjustly enriched. In *Bogert, Trusts and Trustees,* 2d Ed., § 471, p. 8, we find this quotation from Cardozo, C.J.:

> " 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.' "

*Bogert* goes on to quote from Dean Roscoe Pound as follows:

> "Another learned writer has referred to this trust as 'specific restitution of a received benefit in order to prevent unjust enrichment.' "

For a general discussion see Scott on Trusts, 3d Ed., § 57.3.

We think the findings of fact of Judge Martin are supported by the evidence and the conclusions of law based thereon are correct.

Affirmed.

BROCK and MORRIS, JJ., concur.