Brenneman Estate.

Argued November 9, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Samuel Kagle*, with him *Oscar Brown* and *William J. Krencewicz*, for appellants.

*John G. Callender*, with him *George H. Kaercher* and *Henry Houck*, for appellees.

OPINION BY MR. JUSTICE PATTERSON, January 3, 1949:

These appeals are from a decree entered in a proceeding instituted to have judicially determined the rights of the widow of Louis P. Brenneman, deceased, in real estate subject of a declaration of trust executed by decedent in his lifetime without her joinder.

Emma R. Brenneman died testate on November 29, 1929, leaving to survive her three sons, Louis, Robert and John. By her will she gave to her son John a cash legacy of $1,000 and a pair of diamond earrings to him and his daughter Virginia (now Virginia Krecker). To her other two sons, Robert and Louis, testatrix devised absolutely, inter alia, the American Theatre Building (now the Hollywood Theatre), being premises No. 7 South Centre Street, Pottsville, and the building at No. 122 South Centre Street, Pottsville, giving Robert a one-third undivided interest therein and Louis a two-thirds undivided interest, with a proviso that in the event either Robert or Louis wished to sell his interest in these properties the other should have the preference. Her entire residuary estate, comprising Colorado mining properties and stocks and bonds appraised at $121,685, testatrix likewise gave to Robert and Louis, one-third thereof to Robert and two-thirds to Louis, and she appointed Louis as her executor.

On June 27, 1933, Louis married and thereafter executed a writing dated November 9, 1933, referring to his mother's gift to him of a two-thirds interest in her residuary estate and declaring as follows: "Now know ye that I, the said Louis P. Brenneman, *in pursuance of an oral agreement with said Emma R. Brenneman in her lifetime,* do by these presents make known, admit and declare that the following bonds and stocks, a part of the personal estate of said Emma R. Brenneman,

deceased, are held by me in trust only as hereinafter set out, and that I have no beneficial interest therein." There follows a schedule of securities representing in value one-half of the two-thirds interest in personalty given to Louis under the residuary clause. The instrument then provides for payment of the income to John for life, with remainder to John's daughter, Virginia, the principal to be paid to her upon attaining twenty-one years of age, and in the event of her death before attaining her majority to the four sons of Robert or the survivors of them.

Fourteen months later, on January 9, 1935, Louis, without the joinder of his wife, executed a second declaration of trust, reciting that under the terms of his mother's will he had acquired a two-thirds interest in real estate, including premises No. 7 South Centre Street and No. 122 South Centre Street, Pottsville, and declaring that "I, the said Louis P. Brenneman, *in consideration of one dollar and other good and valuable considerations to me in hand paid by John F. Brenneman* of the Borough of Schuylkill Haven, County and State aforesaid, do hereby acknowledge and declare that I hold a one third interest in said above mentioned real estate in trust for the benefit of John F. Brenneman during his lifetime," with remainder to John's daughter, Virginia, to be conveyed to her upon attaining twenty-one years of age, and in the event of her death before arriving at twenty-one years of age, to the four sons of Robert or the survivor or survivors of them in equal shares. Unlike the declaration of 1933, relating solely to personalty, this declaration of trust made no reference to any understanding between Louis and his mother, or to any request on her part regarding the two-thirds interest in real estate.

The declaration of 1935 was discovered, after Louis' death, among other personal papers in a safe deposit box leased by him in the name of the Emma R. Brenneman

Estate, and a copy of the 1933 declaration was later found in the files of his counsel, now also deceased. The original of the 1933 declaration has not been found and is not part of the record. Meanwhile, in September, 1935, less than two years after the declaration of 1933 was made, the securities therein enumerated were transferred by Louis to John as absolute owner, in disregard of the provisions of the declaration of trust, and he has since dealt with them as absolute owner.

Upon the death of Louis,. testate, on April 25, 1940, his widow, Anna B. Brenneman, claimed an undivided one-sixth interest in the Hollywood Theatre and No. 122 Centre Street properties, under section 3 of the Intestate Act of June 7, 1917, P. L. 429, 20 PS 31, which provides: "The shares of the estate directed by this act to be allotted to the widow shall be in lieu and full satisfaction of her dower at common law, so far as relates to land of which the husband died seised; *and her share in lands aliened by the husband in his lifetime, without her joining in the conveyance, shall be the same as her share in lands of which the husband died seised.*" (Italics supplied.) By agreement of the parties one-sixth of. the rents from these properties was collected and held in escrow by the Miners National Bank of Pottsville pending a judicial determination of the widow's rights. A petition for declaratory judgment filed by the widow on November 6, 1946, was dismissed by the court below for lack of jurisdiction, with the suggestion that a substituted trustee be appointed and an account filed by it at the audit of which the conflicting claims might be presented and adjudicated. The Miners Bank of Pottsville was made substituted trustee on May 7, 1947, and filed its account on the same date, showing a balance of $11,285.56 for distribution.

At the audit it was contended on behalf of John Brenneman that the declaration of trust of 1935 was merely an acknowledgment by Louis of a parol trust

and, therefore, not an alienation of property within section 3 of the Act of 1917, supra. This contention was rejected by the court below, on the ground of lack of evidence to establish an oral trust, and the balance for distribution was awarded to the widow, Anna B. Brenneman. Exceptions to the adjudication were dismissed and John and Virginia Krecker filed appeals in this Court. Before the appeals were argued, however, the case was remanded on petition of appellants setting forth that after-discovered documentary evidence had been found which would "clearly and conclusively" establish the existence of an oral trust. The case was reopened by the court below for the purpose of considering the after-discovered evidence, consisting of the copy of the declaration of 1933, relating to personalty, and other evidence in the form of books and records of Louis', establishing payment by him to John of one-third of the rents from real estate prior to as well as subsequent to the declaration of 1935. After hearing, the court below entered a decree reinstating its prior adjudication and ratifying and confirming its decree of distribution awarding the balance to Anna B. Brenneman.

It is a well settled principle that when a testator makes a devise absolute in its terms, but upon an oral agreement that the devisee will apply the devised estate to some lawful purpose designated by the testator, a court of equity will enforce the trust: *Hollis v. Hollis*, 254 Pa. 90, 94, 98 A. 789; Restatement of Trusts, section 55. A constructive trust is imposed under such circumstances to prevent unjust enrichment rather than merely to carry out the intent of the testator: *Porter v. Wolf*, 272 Pa. 93, 116 A. 55; *Gray v. Leibert*, 357 Pa. 130, 135, 53 A. 2d 132. There is no question that this is the applicable rule of law. The sole question is whether the court below rightly decided that appellants failed to meet the burden of proof resting on a party who seeks to assert the existence of such an oral trust.

As held in *Moffitt v. Moffitt*, 340 Pa. 107, 109, 111, 16 A. 2d 418: "Oral trusts in real property are not favorites of the law. They must be strictly proved under rules which have been carefully formulated by us. . . . Evidence to support a parol trust must be direct, positive, express, unambiguous and convincing. . . . Declarations and admissions by the parties, after the execution of the deed, are admissible, in corroboration of other evidence, to establish the trust, but in and of themselves they are inadequate, in the absence of testimony from witnesses who heard the bargain when it was made, or who heard the parties repeat it in each other's presence." See also *McCloskey v. McCloskey*, 205 Pa. 491, 496, 55 A. 180; *Turney v. McKown*, 242 Pa. 565, 568, 89 A. 797; *Glass v. Tremellen*, 294 Pa. 436, 438, 144 A. 413; *Kirk v. Ford*, 330 Pa. 579, 581, 200 A. 26. Here, as the court below states, "there is not one word of testimony to show when or under what circumstances or in what words Emma R. Brenneman charged her son with the trust declared by him in 1935." Apart from the declaration of trust itself, which makes no reference to any understanding or agreement between Louis and his mother, the only evidence consists of the copy of the declaration of 1933 as to personalty, and Louis' conduct in paying one-third of the rents to John prior to 1935. Relying on this, appellants argue that "Since Emma provided for John in the division of the personal residuary estate it would *logically* follow that the same provision was made as to the real estate; otherwise, why did Louis execute the second Declaration and why did he, for the four years prior to its execution, pay John his full share of the rents received by him as agent?"

The reference in the declaration of 1933, relating solely to personalty, to an oral understanding between Louis and his mother, is, in light of the omission of any such reference in the declaration of 1935, of significance as indicating that no such understanding or agreement

existed with reference to the real estate. *Logic* repels any other inference. It may be conceded that Louis' conduct in making payments of a one-third share of the rents, like his execution of the declaration of trust itself, is entirely consistent with the existence of an oral agreement with his mother. But that this is so does not provide the necessary legal proof of the fact of the existence of such understanding, for it is just as consistent with the theory of a voluntary declaration of trust, or with the theory that Louis was attempting to carry out a mere expression of desire on the part of his mother, not intended to impose any legal obligation upon him. Or, indeed, it may be conjectured, as appellee suggests, that Louis was motivated solely by a determination to defeat her rights rather than by any oral understanding with Emma R. Brenneman.

In *Hollis v. Hollis*, supra, testatrix, gave three-fifths of her residuary estate, consisting of a manufacturing business and real estate, to a son, one of four surviving children, and appointed him as executor. The favored son wrote a letter to a disappointed brother stating that the business would be conducted for the benefit of the children equally, and a bill in equity was filed to enforce an oral trust. The court below dismissed the bill and its decree was affirmed on appeal to this Court. Referring to the evidence in that case, the opinion states, pp. 95, 96: "Its interpretation as indicating the existence of a trust imposed by the testatrix and accepted by defendant can rest upon nothing but a mere guess, which is not permissible. . . . it may just as well be taken as an original voluntary declaration of trust, or as evidencing a family arrangement since the testatrix's death. Neither the one nor the other of these, both being at variance with the right alleged in the plaintiff's bill, would serve his case or warrant a decree in his favor. The possibility, however, of the conflicting acceptations of its meaning makes the letter unavailable as proof of what

plaintiff wants to show by it. An item of evidence equally calculated to prove one or two other things, inconsistent with the proposition contended for, cannot be made the basis of a finding affirming that proposition." This language applies with equal force to the evidence relied upon in the present case.

Appellants rely principally upon four decisions, none of which is here controlling. In *Metzger v. Metzger*, 338 Pa. 564, 14 A. 2d 285, the proceeding was adverse to the trustee, seeking to compel her to execute the trust which she denied and contested, and there was positive evidence of the trust in the shape of an admission, made in open court, that she had in fact entered into the oral agreement at the time the title was conveyed to her. *Williams v. Moodhard,* 341 Pa. 273, 19 A. 2d 101, was an action of assumpsit upon an oral agreement concerning the disposition of moneys received from the sale of real estate. No attempt to enforce an oral trust in real estate was there involved. *Buchner v. Buchner*, 114 Pa. Superior Ct. 503, 174 A. 643, held only that section 6 of the Statute of Frauds, barring an action to enforce any implied or resulting trust of real estate after five years, did not preclude enforcement of "a subsisting independent trust and not merely a memorandum recognizing the existence of a prior resulting trust." Finally, in *Kauffman v. Kauffman*, 266 Pa. 270, 109 A. 640, as in *Metzger v. Metzger*, supra, the trust was confessed in open court. Moreover, as the opinion points out (p. 276), since a resulting trust arose under the evidence in that case, it was "not necessary to consider the case from the standpoint of a trustee ex maleficio."

The assignments of error are overruled and the decree is affirmed. The costs in each appeal to be paid by the appellant therein.