452 A.2d 1360

In re IRREVOCABLE INTER VIVOS TRUST AGREEMENT
OF William HANLEY, Deceased.

Appeal of Tullah HANLEY, Administrators of Estate of Marie
Hanley, Heirs of Anna Bird, Commonwealth of Pennsylvania,
Heirs of Gladys H. Leahy, Dennis Hillier, Guardian ad litem for
William L. Hanley, Jr., and Executors of Estate of Jean F.
Dorn.

Wilbur J. SIEBERT and Guy McKittrick, Administrators of the
Estate of Marie Hanley, Deceased

v.

James M. BIRD, Lee Hanley, Richard G. Leahy, Substitute Trus-
tees Under Declaration of Trust for Marie Hanley, Deceased,
Leon J. Leahy and Manufacturers and Traders Trust Company,
Trustees Under Will of Gladys H. Leahy, Tullah Innes Hanley
and Bennett Friedman, Surviving Executors of the Estate of
Thomas Edward Hanley, James M. Bird and Ruth A. McCready,
Executors of the Estate of J.W. Bird, William L. Hanley,
Barbara L. Regan, Richard Leahy, William H. Bird, John E.
Bird, James M. Bird, Thomas E. Bird, Joanne Bird Dorn, Jean
Forster Dorn, Tullah Innes Hanley, Leon J. Leahy.

Appeal of Tullah HANLEY, Commonwealth of Pennsylvania.

Wilbur J. SIEBERT and Guy McKittrick, Administrators of the
Estate of Marie Hanley, Deceased

v.

James M. BIRD, Lee Hanley, Richard G. Leahy, Substitute Trus-
tees Under Declaration of Trust for Marie Hanley, Deceased,
Leon J. Leahy and Manufacturers and Traders Trust Company,
Trustees Under Will of Gladys H. Leahy, Tullah Innes Hanley
and Bennett Friedman, Surviving Executors of the Estate of
Thomas Edward Hanley, James M. Bird and Ruth A. McCready,
Executors of the Estate of J.W. Bird, William L. Hanley,
Barbara L. Regan, Richard Leahy, William H. Bird, John E.
Bird, James M. Bird, Thomas E. Bird.

Appeal of Dennis W. HILLIER, Guardian Ad Litem for William
L. Hanley, Jr., Commonwealth of Pennsylvania.

In re IRREVOCABLE INTER VIVOS TRUST AGREEMENT
OF William HANLEY, Deceased.

154

Appeal of Dennis W. HILLIER, Guardian Ad Litem for William L. Hanley, Jr., Administrators of Estate of Marie Hanley, Deceased, Heirs of Anna Bird, Tullah I. Hanley, Heirs of Gladys H. Leahy, Executors of Estate of Jean F. Dorn, Commonwealth of Pennsylvania.

Wilbur J. SIEBERT and Guy McKittrick, Administrators of the Estate of Marie Hanley, Deceased

v.

James M. BIRD, Lee Hanley, Richard G. Leahy, Substitute Trustees Under Declaration of Trust for Marie Hanley, Deceased, Leon J. Leahy and Manufacturers and Traders Trust Company, Trustees Under Will of Gladys H. Leahy, Tullah Innes Hanley and Bennett Friedman, Surviving Executors of the Estate of Thomas Edward Hanley, James M. Bird and Ruth A. McCready, Executors of the Estate of J.W. Bird, William L. Hanley, Barbara L. Regan, Richard Leahy, William H. Bird, John E. Bird, James M. Bird, Thomas E. Bird, Joanne Bird Dorn, Jean Forster Dorn, Tullah Innes Hanley, Leon J. Leahy.

Appeal of HEIRS OF Gladys LEAHY, Commonwealth of Pennsylvania.

In re IRREVOCABLE INTER VIVOS TRUST AGREEMENT OF William HANLEY, Deceased.

Appeal of HEIRS OF Gladys LEAHY, Heirs of Anna H. Bird, Dennis W. Hillier, Guardian Ad Litem for William L. Hanley, Executor of Estate of Jean F. Dorn, Tullah Hanley, Administrators of Estate of Marie Hanley, Commonwealth of Pennsylvania.

In re IRREVOCABLE INTER VIVOS TRUST AGREEMENT OF William HANLEY, Deceased.

Appeal of Anna H. BIRD, To-Wit the Estate of William Bird, Estate of Joann B. Dorn, James Bird and Thomas E. Bird, Administrators of the Estate of Marie Hanley, Dennis Hillier, Guardian Ad Litem for William L. Hanley, Jr., Tullah Hanley, Commonwealth of Pennsylvania, Heirs of Gladys Leahy, Executors of Estate of Jean F. Dorn.

Wilbur J. SIEBERT and Guy McKittrick, Administrators of the Estate of Marie Hanley, Deceased

v.

James M. BIRD, Lee Hanley, Richard G. Leahy, Substitute Trustees Under Declaration of Trust for Marie Hanley, Deceased, Leon J. Leahy and Manufacturers and Traders Company, Trus-

tees Under Will of Gladys H. Leahy, Tullah Innes Hanley and Bennett Friedman, Surviving Executors of the Estate of Thomas Edward Hanley, James M. Bird and Ruth A. McCready, Executors of the Estate of J.W. Bird, William L. Hanley, Barbara L. Regan, Richard Leahy, William H. Bird, John E. Bird, James M. Bird, Thomas E. Bird, Joanne Bird Dorn, Jean Forster Dorn, Tullah Innes Hanley, Leon J. Leahy.

Appeal of Anna H. BIRD, To-Wit the Estate of William Bird, the Estate of Joann B. Dorn, John Bird, James Bird and Thomas E. Bird, Commonwealth of Pennsylvania.

Superior Court of Pennsylvania.

Argued Nov. 10, 1981.

Filed Oct. 15, 1982.

Reargument Denied Dec. 22, 1982.

Petition for Allowance of Appeal Granted May 11, 1983.

156

John H. Yoder, Smethport, for Tullah Hanley et al.

G. Donald Gerlach, Pittsburgh, for Hillier et al. and William Hanley.

William C. Sennett, Erie, for Bird, participating party.

Howard D. Schwartz, Pittsburgh, for Dorn, participating party.

Before BECK, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

This case involves appeals taken by: 1) Tullah Hanley; 2) the heirs of Anna H. Bird; 3) the heirs of Gladys Leahy; and 4) Dennis W. Hillier, Guardian Ad Litem for William L. Hanley, Jr., from the Order of the Court of Common Pleas of McKean County, Orphans' Court Division, denying their exceptions. We reverse in part and affirm in part.

The facts, which are not in dispute, are as follows: By 1932, William L. Hanley (hereinafter referred to as "Mr. Hanley"), age 88, had amassed a sizeable estate as a result of his business acumen. For example, Mr. Hanley founded and served as President of the Hanley Company and the Hanley Oil Company, the former of which he turned over active management to his son, William, in 1927. Thereafter, William served as President and Mr. Hanley retained the title of Treasurer. In addition, Mr. Hanley had large stock holdings in a number of companies, some of which included South Penn Oil Company (presently known as Pennzoil Company), National Fuel Gas Company and General Motors Company.

In 1927, in an attempt to divest himself of some of his assets, Mr. Hanley made gifts of 500 shares of Hanley Company stock to four of his children, Anna, Edward, William and Gladys. However, Mr. Hanley made no gift to, or for the benefit of, his fifth child, Marie.[1] At this point, it is to be noted that Marie was incompetent, although never legally declared as such. The Hanley family had a strong

---

1. Mr. Hanley had a sixth child, Lauretta, who died in 1918, but was survived by a daughter, Jean Dorn. In the instant case, Jean Dorn's estate is an appellee.

Catholic faith and were concerned with taking care of their own members without undue publicity. Thus, formal guardianship proceedings were never instituted for Marie, either before or after Mr. Hanley's death, nor was Marie ever institutionalized. Additionally, there is evidence in the record to indicate that Marie was unable to speak from birth, but apparently she could communicate with her immediate family in a rudimentary fashion. She could perform simple tasks such as dressing and feeding herself, but could not perform other routine tasks required of an adult, nor could she manage her own financial affairs. Because of such deficiencies in Marie's makeup, she lived with her parents in Bradford, Pa., and had all of her needs cared for by them.

In late 1931 or early 1932, Mr. Hanley decided to make gifts to his five children. The testimony reveals that he talked to his eldest son, William, about the implementation of his desires. To determine the advisability of such gift-giving, Mr. Hanley directed his son to discuss the matter with a financial advisor employed by the Hanover Bank in New York City. Upon William's return, he informed his father that the financial consultant advised against making gifts or executing documents utilizing the term "trust," for it was anticipated that legislation might be forthcoming that would render the advisability of such action suspect.

Based on the advice proffered, Mr. Hanley, on April 25, 1932, gave to each of his four children (William L. Hanley, Jr., Anna H. Bird, T. Edward Hanley and Gladys Leahy) gifts of stock totaling approximately $48,000.00. As for Marie, he gave stocks of equal value to Anna H. Bird and T. Edward Hanley with instructions to use it to care for Marie. Mr. Hanley selected Anna and Edward to carry out this act since they were the only two children residing in Bradford. As far as the duties and obligations attendant to such appointment by their father was concerned, Anna and Edward had no written document evidencing the manner in which the fund was to be used for Marie's benefit. However, we note that each child received a stock certificate evidencing ownership of a fixed number of shares (500) in

Hanley Company. In Marie's case, we have two certificates that were issued. The first, Certificate No. 280, was made out to "ANNA H. BIRD & THOMAS E. HANLEY, TRUSTEES FOR MARY [sic] HANLEY." The Certificate was endorsed by the President ("William L. Hanley, Jr.") and Treasurer ("Wm Hanley"—Mr. Hanley) of the company and dated April 25, 1932. Of significance here is the fact that the stub attached to the Certificate, which was also dated April 25th, was never issued and had written across its face the term "void". Also, on the bottom of the stub, there appears the language: "See certificate # 281". An examination of that document reveals that it was likewise dated April 25, 1932, and was issued in the names of "ANNA H. BIRD & THOMAS E. HANLEY" for five hundred shares of Hanley Company stock. The accompanying stub is dated April 28, 1932, and is marked "for Marie Hanley". This certificate is signed by "Wm Hanley" (Mr. Hanley) as Treasurer and "Gordon W. Reed" as Vice President.

Additionally, transfers of stock were made by Mr. Hanley to his children, which included Marie. For example, twenty-five shares of Hanley Oil Company capital stock, listed as $30,000 on Certificate No. 60, were issued on April 28, 1932, in the names of "THOMAS EDWARD HANLEY & ANNA H. BIRD". The Certificate was signed by Mr. Hanley as President and Thomas C. Francis as Assistant Treasurer. Interestingly enough, the transfer stub has written on it, after the typed language "Issued to," the legend "T.E. Hanley & Anna H. Bird for Marie Hanley". The stub was signed by Anna H. Bird. (Exhibit WH 22)

With respect to 200 shares of National Fuel Gas Company, the records of Manufacturers Hanover Trust Company, transfer agent for National Fuel, indicate that on April 29, 1932, Mr. Hanley transferred to each of his children 200 shares of said stock and, specifically, designated that the shares to be given to Marie were to be issued accordingly: "Anna H. Bird & Thomas E. Hanley, Trustees for Mary [sic] Hanley". (Exhibit WH 15) However, once again, the trust

designation was revoked by Mr. Hanley. On July 19, 1932, the 200 shares were reassigned to "Anna H. Bird & Thomas E. Hanley as Joint Tenants with Right of Survivorship and not as Tenants in Common." *Id.* at 2.

In the month of June, 1932, General Motors and South Penn Oil Company (later Pennzoil) stock certificates were transferred by Mr. Hanley to his children, although on this occasion Marie was not included.

To regress somewhat, on April 29, 1932, *four days* after the transfer of twenty-five shares of Hanley Company stock "for Marie Hanley," Mr. Hanley executed his Will. In the first ITEM of said Will, Mr. Hanley set up a trust of one-third of his estate for his wife's life and upon her death the remaining portion of same, if any, was to fall into his residuary estate.

The second ITEM in Hanley's Will reads:

"If the provisions which I have heretofore made for my daughter, Marie Hanley, shall not, during any year after my death, produce an income of at least Eighteen Hundred Dollars ($1,800.00) then in such event or events I authorize and direct my Executors hereinafter named to pay to or on account of the support and maintenance of my said daughter such sum or sums as shall equal the difference between the income determined and the said sum of $1,800.00, provided, however, that such payment in the judgment of my said Executors shall be deemed necessary for her comfortable maintenance and support."

Mr. Hanley died testate on April 18, 1933, survived by his wife, Johanna, and five children, Marie Hanley, William L. Hanley, Jr., Thomas E. Hanley, Anna H. Bird and Gladys H. Leahy. As noted earlier in this Opinion, a sixth child, Lauretta H. Forster, predeceased Mr. Hanley and was survived by a daughter, Jean Forster Dorn. Johanna Hanley died a year after her husband's death. Marie Hanley passed away on July 3, 1974.

The probate of Marie's estate motivated the appellants [2] to file the instant appeal from the Orphans' Court's determination that the transfer of certain securities by Mr. Hanley to Anna H. Bird and Thomas E. Hanley constituted an outright "gift" to Marie, and, thus, distributable as part of her estate. The heirs of Anna H. Bird, also parties to the action below, took exception to the lower court's Order and filed a timely appeal from the denial thereof. However, the theory presented on behalf of these heirs was that the transfer of securities by Mr. Hanley to Anna H. Bird and Thomas E. Hanley in 1932, vested complete ownership and legal title in said stock in Anna and Thomas.[3]

In responding to the claims made, we will first address the contention of the appellants—Tullah Hanley, Dennis W. Hillier (guardian *ad litem* for William L. Hanley, Jr.) and the heirs of Gladys Leahy, followed by an examination of the averments raised by the heirs of Anna H. Bird.

Appellants urge that the lower court erred in not concluding that the transfer of certain securities by Mr. Hanley, in April of 1932, to Thomas E. Hanley and Anna H. Bird "for Marie Hanley," constituted an oral trust, which, upon Marie's death, would revert to Mr. Hanley's estate in favor of the residuary beneficiaries in his Will. We agree.

**2.** In the case at bar, albeit the heirs of Anna H. Bird also have appealed from the lower court's order, the use of the term "appellants" herein will refer specifically to: 1) Tullah Hanley; 2) Dennis W. Hillier, guardian *ad litem* for William L. Hanley, Jr.; and 3) the heirs of Gladys Leahy. Tullah Hanley, who is the surviving spouse of Thomas E. Hanley and the sole residuary beneficiary of his estate, asserts an argument that is consistent with that proffered by Dennis W. Hillier. That is, that the assets given by Mr. Hanley to Thomas E. Hanley and Anna H. Bird were in trust for Marie, and that upon Marie's death a resulting trust of the principal occurred and title to the assets reverted back to Mr. Hanley's estate for distribution. This argument is identical to that asserted by the heirs of Gladys Leahy.

As for any other points raised by Tullah Hanley in her brief to this Court, we find that they were not specifically raised below, and, therefore, are waived. Pa.R.Civ.P. 1038(d).

**3.** We note that a brief has been filed on behalf of John F. Dorn and Dale F. Dorn, joint executors of the estate of Jean Forster Dorn. Therein, the appellees request that we affirm the order of the Orphans' Court.

The standard of review in examining the findings of a chancellor has been oft-stated:

> " 'In passing upon the questions raised on this appeal we must adhere to the well-established rule that a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal. [Citing cases.] However, the chancellor's "conclusions whether of law or ultimate fact are no more than his reasoning from the underlying facts and are reviewable", especially "where the underlying facts themselves are not in esse but are matters of inference and deduction". [Citing cases.] Furthermore, a chancellor's findings of fact, even though approved by a court en banc, need not be accepted as conclusive if there is no evidence to support them or if they are based on an inference erroneously taken [citing cases] or where the evidence, in order to prevail, must be clear, precise and indubitable or must meet some other prescribed standard [citing a case].' "
>
> *Sechler v. Sechler,* 403 Pa. 1, 4, 169 A.2d 78, 80 (1961). *Accord Hankin v. Hankin,* 279 Pa.Super. 179, 420 A.2d 1090 (1980).

Thus, based on the preceding, with respect to those findings that are no more than inferences or deductions from the evidence, we shall make our own deductions and draw our own conclusions as may be necessary to a proper resolution of the legal questions presented. This type of review is appropriate here, inasmuch as those individuals who were privy to the circumstances attendant to the transfer of securities by Mr. Hanley were either deceased (Anna H. Bird and Thomas E. Hanley) or declared incompetent (William L. Hanley, Jr.) at the time of the hearing. Thus, the lower court admitted into evidence a number of documents, executed by the absent parties, in its attempt to ascertain Mr. Hanley's intent (creation of an "oral" trust *vis-a-vis* the making of an outright "gift" to Marie) during the period in question.

■ The standard to be utilized in determining the existence of an "oral" trust was set forth by our Supreme Court in *Keller v. Keller*, 351 Pa. 461, 462–465, 41 A.2d 547, 548–49 (1945):

> "A trust in personal property may be established by parol evidence[.] The burden of establishing the existence of the trust [is] upon [the party claiming same]. . . . While no particular form of words or conduct is necessary for the creation of a trust, language or conduct and a manifestation of an intention to create the same must be proven by evidence which is sufficiently clear, precise, and unambiguous[.] *In reviewing the evidence to determine the existence of a trust the situation of the settlor and the beneficiary, financial and otherwise, their relation to each other as well as the purpose for which the trust was created, and circumstances under which it is to be administered must be given due consideration. All the evidence and surrounding circumstances must be considered as an entirety; isolated facts and circumstances are ofttimes misleading and do not present a true picture.*" (Emphasis added)

Stated differently, "[i]n order to ascertain the actual intent of the settlor [Mr. Hanley] . . ., the Court must place itself in his armchair and consider not only the language and scheme of the instrument[, if any,] but also the facts and circumstances with which he was surrounded; and these surrounding facts and circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property[.]" (Citations omitted) *In re Trust Estate of Pew*, 411 Pa. 96, 106, 191 A.2d 399, 405 (1963). Of course, Mr. Hanley's intent must be determined as of the date of the creation of the purported trust in 1932. *Id.*

■ Having delineated the general guidelines for our review, we see the real issue to be whether the appellants have met their burden of proving the existence of an oral trust agreement between Mr. Hanley and Anna H. Bird and Thomas E. Hanley for Marie, by clear, direct, precise and

convincing evidence. Whether this burden has been met is a question of law. *See In re Estate of Moore,* 439 Pa. 578, 266 A.2d 641 (1970), overruled on other grounds, *Estate of Grossman,* 486 Pa. 460, 406 A.2d 726 (1979).

■ With these general principles in mind, we now turn to the evidence and circumstances of this case to evaluate appellants' contention that the record does support a finding of an express oral inter vivos trust. In so doing, we are not precluded from looking beyond the 1932 securities transactions "to contemporaneous circumstances[.]" *In re Scholler's Estate,* 403 Pa. 97, 101, 169 A.2d 554, 557 (1961).

By 1932, Mr. Hanley, who by then was an octogenarian, had compiled an impressive record in the business community, e.g., he was Treasurer and, before that, President of the Hanley Oil Company and Hanley Company, and accumulated a sizeable stock portfolio. Moreover, Mr. Hanley was not indifferent to the welfare of his children, in particular Marie. Of these children, three were living in Bradford, Pa., in 1932—Anna, Thomas and Marie. The fourth child, William, resided in Connecticut and the last one, Gladys, lived in Buffalo, New York.

Of relevance here is the uncontroverted fact that Marie (born August 1, 1890) was an incompetent since birth. She lived with her parents until their death and never married or had children. All through Marie's life, she was unable to speak, except through monosyllabic expressions, nor was she able to care for herself and, in fact, required the constant help and attention of a nurse or housekeeper. Marie never owned any property in her own name. She was unfamiliar with money or the management of money-matters. Marie had no formal training or schooling. Through the assistance of her parents, she did learn to dress herself, eat at the table and do simple household chores.

As recounted earlier in this Opinion, Mr. Hanley wanted to transfer stocks to his children, but, because of advice secured from a financial consultant, learned that possible new federal gift tax laws counseled against the establish-

ment of a "trust" in favor of any of his children. Upon obtaining this information, Mr. Hanley decided to give 500 shares of stock in Hanley Company to each of his four children, William, Thomas, Gladys and Anna. On this occasion, Mr. Hanley issued capital stock initially in the names of Anna H. Bird and Thomas E. Hanley, either as trustees for Marie or for Marie's care, but subsequently negated these certificates so as to reflect only the names of Anna and Thomas.

The specific manner in which the $48,000 in stocks were issued and/or modified appears *supra,* and it will not be repeated at this point of the discussion. As analyzed by the court below, five factors of the evidence furnished the "underlying facts" from which it could be inferred that there had not been an agreement creating an oral trust. Such evidence was:

1) The fact that Mr. Hanley's Will, executed a few days after the April transfers, specifically utilized language indicative of his awareness of how to create a trust while the transfers included no such verbiage;

2) The Federal Estate Tax Return of Mr. Hanley, filed after his death by Anna, Thomas and William, "denied that there were any trusts created by the decedent during his lifetime";

3) A document drawn by counsel on behalf of William L. Hanley, Jr., in November of 1935, a paper written by Thomas E. Hanley on March 18, 1936 and an affidavit signed on July 6, 1954 by Thomas E. Hanley all made reference to the property (Marie's stocks) being ultimately distributed to Mr. Hanley's remaining children. (However, the lower court found this to be unpersuasive because "[n]ot one of these three writings purport[ed] to say what Hanley senior actually did say when he made the gift [of stocks in question]");

4) The first document mentioned in Point # 3, *supra,* was not signed by Anna Bird on the basis that it was an "assumption" on William's part that any residue of the

fund (stock transfers) was to become part of her father's (Mr. Hanley's) estate; and

5) The Federal Estate Tax Returns of both Anna and Thomas, filed upon their death, made no mention that the estates of either had any interest in a trust fund.

Despite the aforementioned, the lower court concedes that "[t]he events indicate that Hanley senior was concerned greatly about Marie and that he wanted to provide for her . . . [,] but he failed to [do so by] . . . set[ting] up . . . a trust." (Lower Court Opinion at 14–15) Rather, the court goes on to state, "[Mr. Hanley] knew Marie was incompetent but did not desire to have any stigma placed against the family by having a court declare her incompetent, so he gave the assets to T. Edward and Anna to act as her guardians." *Id.* at 15.

Although we agree with the lower court that the evidence reveals that Mr. Hanley was interested in the welfare of his daughter, Marie, we do not accept its inference, drawn from the facts, that Mr. Hanley intended to have Thomas and Anna act as guardians rather than as trustees for Marie's property.

We now turn to the court's predicate for its ruling. As for Point # 1, *supra,* we disagree that the absence of trust language in one instrument (stock certificates) and its presence in another (Mr. Hanley's Will, which was prepared within four days thereafter) is reflective of Mr. Hanley's intent not to establish a trust on behalf of Marie.

■ The Court in the case of *In re Thompson's Estate,* 416 Pa. 249, 206 A.2d 21 (1965), although dealing with a Will contest, responded to an issue in a manner that is instructive to the case at bar. There, the testatory had indicated in one paragraph of his Will that the executor was to hold certain personal effects "in trust" and to distribute them according to a memorandum enclosed in an envelope with the Will. However, in the next paragraph, the testator gave the executor all of the residuary estate to be distributed among local charities as deemed worthy in the executor's sole

discretion. A codicil to the Will, executed three years there-after, cancelled the objective of the two preceding paragraphs and substituted another individual as executrix. The Court, in determining that the first executor had standing to contest the probate of the codicil as a "trustee" under the initial Will, responded to the executrix's argument that no trust was established:

> "Appellee[-executrix] contends that the omission in the 20th paragraph of the words 'in trust' or 'trustee'—especially in view of the presence of the words 'in trust' in the 19th paragraph—negatives the existence of a trust. Such contention lacks merit. While the presence or absence of the words 'in trust' or 'trustee' must be given consideration, the presence or the absence of such words is not controlling in determining the existence or non-existence of a trust. *Tunnell's Estate,* 325 Pa. 554, 190 A. 906; *Sheets' Estate,* 52 Pa. 257.
>
> \*    \*    \*    \*    \*    \*
>
> A study of the 20th paragraph of the [W]ill indicates that, while [appellant, who is named under the testator's Will to act on his behalf,] is *nominally* an executor, *actually* he is a trustee clothed with the duties of a trustee." (Emphasis added) (Footnote omitted) *Id.* 416 Pa. at 254, 206 A.2d at 25.

Based on the aforesaid, we learn that neither the presence nor the absence of the words "trust," "trustee" or "beneficiary" is determinative of an intention to create a trust. 1 A. Scott, Law of Trusts § 24 (3d Ed.1967). Moreover, it is well settled that no particular form of words or conduct is necessary to create a trust. *Buchanan v. Brentwood Federal Savings and Loan Association,* 457 Pa. 135, 320 A.2d 117 (1974); *Provident Trust Co. v. Lukens Steel Co.,* 359 Pa. 1, 58 A.2d 23 (1948); Restatement (Second) of Trusts § 24 (1959). As one author has stated, the question is whether the agreements taken as a whole evidence an intent by the parties in question "to impose . . . upon a transferee of the property equitable duties to deal with the property for the benefit of another person." 1 A. Scott, Law of Trusts § 24,

at 192 (3d Ed.1967); *see* Restatement (Second) of Trusts § 2 (1959).

■ A cursory examination of the certificates drawn in the names of Anna H. Bird and Thomas E. Hanley in isolation, some of which contained the language "trustees for Mary Hanley" or "for Marie Hanley" and were subsequently altered, might give one the impression, and justly so, that Mr. Hanley contemplated the establishment of a trust and then dismissed the idea in favor of making an outright gift to Marie. However, as appealing as such interpretation may be at first blush, such a position loses some of its allure when viewed against the backdrop of Marie's admitted incompetence, especially in regard to financial matters. *See generally Lapayowker v. Lincoln College Preparatory School, Inc.,* 386 Pa. 167, 170, 171, 125 A.2d 451, 454 (1956) (establishment of a resulting trust in favor of grantor must be supported by clear, explicit and unequivocal—though not necessarily uncontradicted—evidence). This malady on Marie's part was not discounted by Mr. Hanley, as evidenced by the specific reference in his Will that:

> "If the *provisions* which I have *heretofore* made for my daughter, Marie Hanley, shall not, during any year after my death, produce an income of at least Eighteen Hundred Dollars ($1,800.00) then in such event or events I authorize and direct my Executors hereinafter named to pay to or on account of the support and maintenance of my said daughter such sum or sums as shall equal the difference between the income determined and the said sum of $1,800.00, provided, however, that such payment in the judgment of my said Executors shall be deemed necessary for her comfortable maintenance and support." (Emphasis added)

Therefore, given the preceding, the existence of some arrangement ("provisions") having been formulated by Mr. Hanley dehors the Will is not so tenuous as to negative its existence. This belief is buttressed by the fact that Marie was not named as a residuary legatee in Mr. Hanley's Will, whereas the other four children were so included. Thus, at

least at this stage of the discussion, suffice it to say that the lack of specific trust language in the certificates is inconclusive as to the existence or non-existence of a trust. *See In re Thompson's Estate, supra.*

■ Point # 2, *supra,* of the lower court's itemization of those factors militating against the existence of a trust, deals with Federal Estate Tax Returns filed by Mr. Hanley's children upon his death and their failure to list therein the existence of any trust. We find this point to be unpersuasive. As was said in *Sayre's Estate,* 443 Pa. 548, 552, 279 A.2d 51, 53 (1971), the failure by an individual to treat certain transactions properly in their federal tax returns "could be the result of [their] misunderstanding of the Federal tax laws." *Accord In re Estate of Tippins,* 487 Pa. 107, 112 n. 2, 408 A.2d 1377, 1380 n. 2 (1979). There was no evidence presented instantly to indicate a contrary result.

■ Point. # 3, *supra,* is equally tenuous. The writings executed by various family members to prove that Mr. Hanley intended to create a trust are not rendered ineffectual because they neglected to state therein what Mr. Hanley "actually did say when he made the" transfer of stock to Anna and Thomas. As we stated previously, a trust relationship can arise out of the conduct of the parties as well as the spoken word. *See Estate of Leggett v. United States,* 418 F.2d 1257 (3d Cir.1969); *In re Estate of Trbovich,* 488 Pa. 583, 413 A.2d 379 (1980); *see also In re Koziell's Trust,* 412 Pa. 348, 194 A.2d 230 (1963); *In re Scholler's Estate, supra.* For example, within the same period that the stocks in question were issued, Mr. Hanley had his Last Will and Testament drawn. Therein, he *specifically excluded* Marie from taking as a beneficiary under the residuary clause. However, he did make allowances in his Will for supplementing Marie's income if the "provisions" he had made outside the testamentary document fell short of taking care of her needs. This is, at the very least, some indicia that Mr. Hanley took steps, exclusive of his Will, to provide for Marie's care and maintenance.

■ During the years that followed the stock transfer, Anna H. Bird and Thomas E. Hanley established a "Check and Deposit Register" in their names. (Exhibit WH 36) Dividend receipts for Hanley Company, South Penn, General Motors and National Fuel Gas were reported as received in this account and detailed disbursements were recorded from it. Some of the expenditures were indexed under "in payment of" for: 1) "a dog-Marie"; 2) "Marie Fur Coat"; 3) "Marie Clothes"; and 4) "For Marie Exp." (Exhibit WH 36, at RR. 031) Additionally, an August, 1935 statement of the account (the earliest bank statement available) establishes that The Bradford National Bank (which has since been incorporated and renamed the Pennsylvania Bank and Trust Company) had an account for Marie, and it was maintained in the names of "Anna H. Bird and T.E. Hanley Trustees". (RR. 18–32) The trustees from time to time made withdrawals from the trust fund and executed notes to themselves "as Trustees". (Exhibits WH 33–35) Such record keeping by Anna and Thomas is reflective of their attempt to memorialize the accretions from stock dividends and splits as they accrued, as well as documenting withdrawals when made. All this conduct, at least as we interpret it, points to the conclusion that Anna and Thomas were acting as trustees for Marie. *See Estate of Leggett v. United States, supra.*

■ The lower court's Point # 4, *supra,* makes mention of a writing prepared during November of 1935, in which William L. Hanley, Jr., stated that it was his father's intention, after Marie's death, to have "so much of the shares of stock above described or so much of the proceeds or reinvestment of the same as might remain should become a part of his[—Mr. Hanley's—] Estate and distributed to and among his four children . . . ." (Lower Court Opinion at 11) William sent this writing to Anna and Thomas to have them endorse it for the purpose of establishing that they were all in agreement as to their father's intention regarding the stocks issued to Marie or on her behalf. As the court correctly notes, albeit Thomas signed the writing, Anna

refused on the basis that the content of the letter was an "assumption" on William's part. However, we place no great weight in Anna's refusal to sign, for in the ensuing years a proliferation of documents were circulated among the parties in their attempt to document a consensus by the trio as to their father's intention, which is at odds with Anna's original position. Moreover, the writings that subsequently followed span too great a period of time (1936 to 1965) to make them relevant in the ascertainment of the settlor's (Mr. Hanley's) intention in 1932. *See In re Estate of Keeney,* 465 Pa. 45, 348 A.2d 108 (1976) (there is no support for the contention that a statement made as long as three years after the creation of a joint property interest is probative of the transferor's intent at the time of the transaction); *Sechler v. Sechler, supra* (deciphering the meaning of a letter written by the transferor to her daughter, 11 years after the conveyance in question by the transferor to her son, would have been pure speculation, particularly as to holding that one-half interest in the property transferred was to be divided between the two children). Thus, we find such matter not probative of Mr. Hanley's intent in transferring the stocks.

■ Lastly, as to Point # 5, *supra,* we find that the absence of any mention in Anna H. Bird's or Thomas E. Hanley's Federal Estate Tax Returns as to their interest in any trust is not dispositive of or pivotal to the question of whether the settlor intended to establish a trust for Marie in 1932—Anna having died on September 18, 1966 and Thomas having died on April 9, 1969. Aside from the fact that the disparity in the dates minimizes their relevance in deciphering the settlor's intent as of the period in question (1932), *see In re Estate of Keeney, supra; Sechler v. Sechler, supra,* it is plausible that the executor or administrator of the respective estates failed to make the complained of inclusion as a "result of [his or her] misunderstanding of the Federal tax laws." *Sayre's Estate, supra,* 443 Pa. at 552, 279 A.2d at 53. This recitation of the facts, when aligned alongside the law,

disposes of the last prong of the lower court's basis for its ruling.

■ Based on our meticulous review of the voluminous record and the four extensive briefs that accompanied this appeal, we find it most difficult to believe, under the circumstances here present, that a man of Mr. Hanley's accomplishments and business acumen would make an outright gift of stock (valued in 1932 at $48,000.00 [4] and now estimated to be worth—i.e., the decedent's entire estate—approximately 2½ million dollars) to a total incompetent. We cannot accede to the lower court's contention on this aspect of the case. To do so "would lead to a highly improbable result . . . ." *In re Fahey's Estate,* 360 Pa. 497, 499–500, 61 A.2d 880, 881 (1948). Therefore, ascribing "a meaning conformable to the [settlor's] plausible intent . . . if agreeable to reason[,]" *ibid,* we conclude that Mr. Hanley intended to establish a trust on behalf of his daughter, and that upon Marie's death Mr. Hanley desired that any assets not consumed in the trust corpus would revert back to his estate and be distributed through the residuary clause of his Will. It is true that " '[o]ne who seeks to establish the existence of a resulting trust bears a heavy burden of proof; the evidence must be "clear, direct, precise, and convincing." ' " (Citation omitted) *Grubb v. Delathauwer,* 274 Pa.Super. 511, 516, 418 A.2d 523, 526 (1980); *see generally McHenry v. Stapleton,* 443 Pa. 186, 278 A.2d 892 (1971). We are satisfied, however, that the appellants have met their burden.

■ Instantly, we are presented with evidence of a strong bond of affection between Mr. Hanley and his daughter, Marie; that she was the actual object of his bounty; that Mr. Hanley was anxious to place any gift of stock for

---

**4.** We take issue with the lower court's attempt to minimize the *dollar value* of the stocks involved in the transfer by characterizing "[t]he amount given to Marie [ ] as no[t] extravagant . . . [.]" (Lower Court Opinion at 15) Quite the contrary, by today's monetary standards the stocks, valued in the amount of $48,000.00 in 1932, would be the equivalent of a $350,000.00 investment in the market place. Certainly, this is a sizeable investment to leave in the hands of any person, let alone an incompetent, for the purposes of managing and ultimate dispersal.

his daughter out of the reach of the federal tax collectors and to assure himself that she would be attended to and cared for the rest of her life. To accomplish all this, Mr. Hanley transferred stock on behalf of his daughter to Anna and Thomas, who were the only two of his four other children residing in Bradford, Pa., and could, therefore, monitor the trust. Additionally, we have evidence that a few days after this stock transfer, Mr. Hanley executed his Will but saw no need to make any allowances for Marie's well-being therein. In fact, he specifically noted in the Will that "provisions" for Marie were already formulated "heretofore" to provide for her wants. In compliance with such "provisions" Anna and Thomas took steps to adhere to their father's wishes.

Consequently, based on the aforesaid, we are satisfied that the appellants' established an oral trust[5] in the disputed items of property, see *Keller v. Keller, supra;* see generally *In re Estate of Trbovich, supra,* and that a resulting trust in the stocks and additions thereto was created in favor of those residuary beneficiaries under the Will of Mr. Hanley. The lower court's order being to the contrary, it is herein reversed and the case is remanded for the determination of

5. We, as a result of such finding, dismiss the determination by the lower court that Anna and Thomas were holding the assets in question as guardians for Marie. To start with, no evidence appears from our review of the record to indicate that such supervisory status was intended by Mr. Hanley. This is especially so if one considers that a trustee has legal title to the property, whereas a guardian does not but merely has certain powers and duties to deal therewith for the benefit of the ward. Moreover, the ward, in a guardianship situation, has title to the property. Restatement (Second) of the Law of Trusts, § 7 Comment (a). Here, Anna and Thomas had legal title to the trust assets. Marie only had a life estate, not legal title to the assets.

Next, since Marie was an incompetent, although not judicially determined to be such, any guardian would have had to be appointed by the court of common pleas. *See In re Kreider's Estate,* 17 Fiduciary 290, 11 Lebanon 122 (1966) (guardian can only be appointed by a court, while a trustee may or may not be so appointed); *see also* 20 Pa.C.S.A. § 5511 & 5512 (1975). This did not occur here.

Lastly, we find no evidence to establish the existence of Anna and Thomas as "de facto guardians." *See Beilstein's Estate,* 147 Pa. 85, 23 A. 349 (1892); *Vanartsdalen v. Vanartsdalen,* 14 Pa. 384 (1850).

the proper manner in which the assets in question are to be distributed and of the respective recipients thereof.

Before bringing this case to a close, we need to address the contention of the heirs of Anna H. Bird. They urge that "the lower court err[ed] in failing to conclude that the transfer of certain securities by William L. Hanley to Anna H. Bird and T. Edward Hanley in 1932 was an outright transfer of said stock to Anna H. Bird and T. Edward Hanley, vesting complete ownership and legal title in said stock in Anna H. Bird and T. Edward Hanley[.]" (Brief for heirs of Anna H. Bird at xi) We have reviewed the record and the law and find no support for such a claim. Additionally, we mention that to agree with the position of the heirs of Anna H. Bird would be contrary to our main holding as to the averments of the other appellants. Thus, the argument of the heirs of Anna H. Bird is found to be meritless and the lower court's order, as it deals with them, is affirmed.

We reverse the lower court's order as it pertains to the appellants and remand for proceedings consistent with this Opinion. However, we affirm the lower court's order as to its denial of the claim of the heirs of Anna H. Bird.

Jurisdiction is not retained by this Court.

JOHNSON, J., files a dissenting statement.

JOHNSON, Judge, dissenting:

I respectfully dissent. Our case law is exigent in demanding clear and convincing evidence before an oral trust will be found. *See, e.g., In Re Estate of Trbovich,* 488 Pa. 583, 413 A.2d 379 (1980) (clear, precise, unambiguous, of the highest probative value). *Sechler v. Sechler,* 403 Pa. 1, 169 A.2d 78 (1961) (clear, precise and indubitable); *Gribbel v. Gribbel,* 341 Pa. 11, 17 A.2d 892 (1941) (clear, precise, indubitable, definite and convincing); *Popilock v. Piernikoski,* 161 Pa.Super. 587, 56 A.2d 326 (1948) (clear, precise and indubitable). I am not in agreement with the majority in this case that the evidence from which the majority finds an oral trust meets these requirements. The naked facts, separated

from any inferences, are that (1) Mr. Hanley gave $48,000.00 in stock certificates to four of his five children, and an extra $48,000.00 to two of the same four; (2) Mr. Hanley in his will a few days later referred to provisions he had already made for his fifth child, Marie, and provided further in case those prior provisions should prove inadequate for her care and maintenance; (3) some years afterwards the children to whom the extra $48,000.00 had been given, Anna and T. Edward, began to refer to themselves as trustees.

I agree with the majority that the tax returns are not probative evidence in this matter. But I do not agree that the evidence presented to us is sufficient to prove the establishment of an oral trust in Anna Bird and T.E. Hanley for the benefit of their sister Marie. I would therefore affirm the order of the lower court.